## J. FRANK WEANT *vs.* THE SOUTHERN TRUST AND DEPOSIT COMPANY.

*Rights of Holder in Due Course of Accommodation Check—Interest—Explanation by Trial Court of Instruction—Right of Holder Against Drawer of Check Who Stopped Payment.*

One who discounts a note or a check in due course, without actual knowledge of any fraud or defect invalidating the same in the hands of the payee, is entitled to enforce payment against the maker, although he executed the note or check without consideration and for the accommodation of the payee.

When a plaintiff is entitled to a sum of money with interest thereon from a certain date, the verdict of the jury should be for the total of the principal sum with interest added to the day of trial, and not for the principal sum with interest.

The trial Court has the right at any time to explain to the jury the legal effect of instructions granted.

The defendant gave to one P. his check on a bank for a certain amount for P.'s accommodation. P. deposited the check in his account with the plaintiff bank, received credit therefor and drew out the whole amount. On the day he gave the check, defendant notified his bank on which it was drawn not to pay it, and the plaintiff was therefore obliged to take it up. Afterwards P. gave to the plaintiff promissory notes for the amount of the check, which plaintiff agreed to receive as security upon condition that defendant endorse the same. Defendant refused to endorse the notes, and they were not paid by the maker. *Held,* that the plaintiff is entitled to recover from the defendant the amount of the check with interest from the date thereof less a certain sum which P. had paid on account.

*Decided February 4th, 1910.*

Appeal from the Superior Court of Baltimore City (NILES, J.).

*Plaintiff's 3rd Prayer.*—That there is no evidence in this case legally sufficient to show that the Southern Trust and Deposit Company had actual knowledge of any infirmity or defect in the check sued upon, or any knowledge of such facts that its action in taking said check amounted to bad faith. (*Granted.*)

*Plaintiff's 5th Prayer.*—If the jury shall find from the evidence in this case that the defendant drew the check on the First National Bank for eight hundred and twenty-five dollars ($825), to the order of S. W. Peck, offered in evidence; that the said S. W. Peck endorsed the same in blank and deposited it in his account with the Southern Trust and De-

posit Company; that said company thereupon placed the amount thereof to the credit of said Peck on his said account; that said Peck afterwards withdrew from his said account with said company the whole amount of said check; and that the defendant notified the said First National Bank to stop payment on said check; and said check was presented for payment to said bank and payment was refused and has never been made; and shall further find from the evidence that after payment was so refused the said Peck delivered to said Southern Trust and Deposit Company two promissory notes, for four hundred dollars ($400) and four hundred and twenty-five dollars ($425), respectively, drawn by said Peck and Mary O. Peck, his wife, to the order of the defendant, upon the condition that the defendant was to endorse said notes, and the said Southern Trust and Deposit Company was to hold them as security for the payment of said check, and credit the respective amount of said notes, when paid, upon the amount due upon said check; and shall further find from the evidence that the defendant refused to endorse said notes and that subsequently said Peck paid up the sum of eighty-five dollars and fifty-six cents ($85.56) on account of said check, and gave the said Southern Trust and Deposit Company a promissory note for three hundred and thirty-nine dollars and forty-four cents ($339.44) drawn by said Peck and Mary O. Peck, his wife, to the order of said Peck, and by them endorsed in blank, in renewal of said note for four hundred and twenty-five dollars ($425), upon the condition that the defendant was to endorse said renewal note, and said company was to hold the same, with said note for four hundred dollars ($400), as security for the payment of said check, and credit the respective amounts of said notes, when paid, upon the amount due upon said check; and shall further find that the defendant refused to endorse said note for three hundred and thirty-nine dollars and forty-four cents ($339.44), and that none of said notes has ever been paid,— then the plaintiff is entitled to recover the full amount of

said check with interest thereon from the date thereof, less said sum of eighty-five dollars and fifty-six cents ($85.56) with interest thereon from the date of said note for three hundred and thirty-nine dollars and forty-four cents ($339.44). (*Granted.*)

The Court read this prayer to the jury, and after reading it said: "And I say to you, you should make a calculation and find the interest and add it to the whole amount, instead of making the verdict for a certain amount and interest. You make all the calculations."

*Defendant's 1st Prayer.*—If the jury shall find from the evidence that the defendant, on the 13th day of January, 1906, gave to S. W. Peck, a check on the First National Bank for the sum of $825 without consideration, and that before the said check was paid the defendant stopped payment and that thereafter on January 16, 1906, the said Stephen W. Peck and Mary O. Peck, his wife, gave two notes, payable to the defendant for $400 and $425 respectively, and that the defendant refused to endorse said notes to the plaintiff and that thereafter the said Stephen W. Peck and Mary O. Peck, his wife, gave other notes for said indebtedness of the defendant of $825.00 and that the Southern Trust and Deposit Company accepted said notes and released the defendant from liability, then their verdict should be for the defendant. (*Refused.*)

After counsel had argued the case to the jury, the Court of its own motion offered and granted the following instruction :

In view of what has been said in argument, the Court informs you that there can be but one recovery by the receivers of the Southern Trust and Deposit Company for the amount of the check offered in evidence. Whatever may be paid by Mr. Peck to the receivers on account of this check must be credited to the amount of the judgment in this case, if one is rendered, and if as between the defendant and S. W. Peck, Peck is primarily liable, the defendant may recover against Peck any amount which defendant may pay on account of such check.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*O. Parker Baker* and *Geo. E. Robinson,* for the appellant, submitted the cause on their brief.

*William S. Bryan, Jr.,* (with whom was *Mason P. Morfit* and *Wm. Pinkney Whyte, Jr.,* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

On January 13th, 1906, the appellant, J. Frank Weant, gave to Stephen W. Peck his check for $825.00 on the First Nat. Bank of Baltimore and the latter on the same day deposited this check to his own credit with the appellee, the Southern Trust and Deposit Company where he kept his account. On the same day, the appellant, by a written order to the First Nat. Bank, stopped payment of this check, which was presented for payment at said bank in the regular course of business, and was returned, unpaid, to the appellee by the runner of the Nat. Bank of Commerce through which the appellee cleared, and marked "payment stopped." The appellee paid the amount of the check to the runner of the Nat. Bank of Commerce, and took up the check which thereafter remained in its possession, and has never been paid, except that a credit of $85.56 has been given for several small sums on account. On May 25th, 1908, the appellee went into the hands of receivers, under an order of Circuit Court No. 2 of Baltimore City which gave authority to the appellee to maintain this suit which was instituted June 29th, 1908.

The declaration contained the common counts, and a special count on the check setting forth the stoppage of payment as the reason for its non-payment. There were five pleas filed. The first and second were the general issue; the third was payment; the fourth was a release upon the check in consideration of the giving of certain notes for the amount of said check by said Peck and his wife, upon which notes the

plea alleged the full amount of said check had been collected by the appellee; and the fifth, that the check was given by the appellant without consideration and was procured by fraud and misrepresentation by the plaintiff and payee, known to the plaintiff before the endorsement of the check to it, and issue was properly joined on all these pleas, the verdict being for the plaintiff for $873.17 on April 7th, 1909. Mr. Taylor, the paying and receiving teller of the appellee, testified to the signature of the appellant on the check and of Peck as endorser, and to its deposit on January 13th, 1906, by Peck to his credit; also that concurrently with its deposit, Peck withdrew the larger part of that deposit, and the whole balance of the account was drawn out on other checks, and that this check had never been paid.

It was proved by Mr. Wilcox, secretary and treasurer of the appellee, that when the check was returned unpaid he telephoned Peck about it who came the same day, and said he would see the appellant about it; and that he then and there wrote a waiver of protest upon the check, which Peck signed, and that on the next day, or the day after that, two notes were executed by Peck and wife to the order of the appellant, both dated January 16th, 1906, one for $425 at two months, and one for $400 at four months, and were delivered to him, and that he received them from Peck with the understanding between them that the appellant would endorse them, and with directions from his board of directors, that if, and when, so endorsed, they should be accepted in lieu of the check, but that the appellant refused to endorse them, and they were never accepted in lieu of the check. He also testified that the directors were anxious to avoid suit against the appellant, as he was very vindictive and was talking abusively about the bank, and that suit was delayed in the hope that Peck would be able to arrange the matter without suit. When the two months note matured on March 16th, 1906, a new note was made by Peck and wife to his order for $339.44, being for the difference between the original note for $425 and the $85.56 paid by Peck, and the original $425 note was

stamped "replaced by new note;" that the understanding with Peck was that this note should not be accepted until indorsed by the appellant, and that it never was so indorsed, and was never accepted as part payment of the check. There was some confusion arising out of the assumption by the appellant that two new notes were executed on March 16th, but it is abundantly clear from all the evidence that the only new note executed was the one for $339.44 payable four months after date.

Peck testified "that when he deposited the check with the appellee he drew some of that money but could not tell how much," it varied from $100 to $200 or $300, and that "he took the money he withdrew that day to the appellant." It is not clear from his testimony whether there was any consideration for the check but we shall treat it as given for Peck's accommodation. He testified that he and his wife executed the two notes of January 16th, 1906, and "that Mr. Wilcox's view of it was that they were to have been indorsed by the appellant," and that "*he* intended Mr. Weant to indorse them," and asked him to do so, but he refused. He could not give any definite statement as to the execution of any renewal notes, but he identified the note of $339.44 as signed by himself and wife, but that "he could not recognize at all what it was for, or deliberately connect it with that transaction." This was all the plaintiff's testimony.

The appellant testified in his own behalf that Peck had been getting a check from him almost every day for sometime, three or four months; that he owed Peck nothing on January 13th and received no consideration for the check of that date; that the payment made by Peck to him that day "was possibly money on account of the previous check," and that he stopped payment of that check of the 13th because the thing had been going on so long, and that Wilcox knew that these checks were being deposited during all that period and told him he was satisfied this particular check was an accomodation check, but this was after the deposit of the check; that

Wilcox wanted him to endorse the notes of January 16th and he refused, and that he had several telephone talks with Wilcox "who wanted to make him fix up that check, and told him if he would indorse the notes of January 16th he would release him on the check." He also said that Wilcox told him in reference to the notes or note of March 16th, that if he would indorse them it would release him on the check, but on cross-examination he said he was not asked by Wilcox to indorse any second notes, and that he had never stopped payment of any check before. He also said that sometime in March Wilcox talked with him over the telephone "in regard to a set of notes that had been given by Peck and his wife, or rather made to S. W. Peck and indorsed by them and that it released me. *I so understood it."*

This closed the defendant's testimony, whereupon the plaintiff offered five prayers, of which the third and fifth were granted and the others were refused, and the defendant offered one which was refused. After reading to the jury the plaintiff's fifth prayer, the Court gave a verbal direction to the jury, in explanation of the reference in the prayer to the allowance of interest, and after the argument of the case, by reason of something said in the argument the Court, upon its own motion, gave an additional instruction, designated "Court's Instruction," all of which will be set out in the report of the case. The only exception is to the ruling on the prayers offered and to the Court's own instructions.

The plaintiff's third prayer was framed to meet the issue joined on the fifth plea which alleged want of consideration for the check, and fraud and misrepresentation by the plaintiff and payee in procuring it, which was known to the plaintiff before the check was indorsed to it, and the prayer was carefully drawn with reference to the provisions of the Negotiable Instrument Act, to challenge the legal sufficiency of the evidence to sustain that defence.

The plea apparently relies upon want of consideration, and fraud and misrepresentation in procurement of the check, as *separate* valid defences.

Section 48 of Article 13 defines an accommodation party as "one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." And the section further declares that "such a person is liable on the instrument to a·holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." The *mere* fact therefore that this note was an accommodation note, would not constitute a defense against a holder in due course, and section 78 declares that "every holder is deemed *prima facie* to be a holder in due course." Section 71 defines a holder in due course: (1) The instrument must be complete and regular on its face. (2) He must have taken it before it was overdue, and without notice of previous dishonor, if so dishonored. (3) It must have been taken in good faith and for value. (4) At the time he took it he must have been without notice of any infirmity in the instrument, or defect in the title of the person negotiating it.

Section 75 of Article 13 provides that: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had *actual knowledge* of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Section 76 provides that "a holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment for the full amount thereof against all parties liable thereon."

This check is complete and regular on its face; it was negotiated to the appellee for value the same day it was issued; there is no evidence of any previous dishonor, nor of any infirmity in Peck's title to the check, nor of knowledge by the appellee of any such facts that its taking of the check amounted to bad faith.

The appellant testified that he had been giving similar checks to Peck, that is, *"lending him his name,"* for a long period before, and that he had never stopped payment of any check before, and that he had no communication with the appellee until after the check had been returned to the appellee marked "payment stopped." Nor is there a particle of evidence of any fraud or misrepresentation on the part of Peck in procuring the check, or of any defect in his title, or restriction upon its use, or of any knowledge on the part of the appellee of any fact connected with the making and delivery of the check by the appellant to Peck. On the contrary, the fact that the appellant had been freely lending his name to Peck upon similar checks, which were deposited with the appellee and made the basis of credit to him, is evidence of the strongest character to show good faith on the part of the appellee in taking this check.

There was no error in granting this prayer.

The plaintiff's fifth prayer is assailed as misleading because it is alleged that it leaves out of question the contention of the defendant that new notes were given in place of the check, thereby creating an obligation on the part of Peck and relieving the defendant of liability on account of the check. It is difficult to understand this contention in face of the fact that the prayer deals fully with the execution and delivery of these new notes and all the circumstances attending that feature of the case. The theory of the prayer as respects the effect of these notes, is that they could not defeat the plaintiff's right to recover, provided they were given and received as security for said check, and not in payment therefor, and provided that neither the check nor the notes have been paid. It required the jury to find that the acceptance of these notes by the appellee in the place of this check was upon the express condition that they should be indorsed by the appellant so as to preserve his liability for the debt, and that they were never indorsed by him, and have never been paid by anyone, and there could be no more effective method of negotiating their acceptance in payment of the check. We

can perceive nothing whatever in this prayer tending to mislead the jury as to any possible effect of these notes. The first two notes, which were made payable to the appellant, would have been utterly worthless in the hands of the appellee without his indorsement, and this well illustrates the futility of the defence set up.

This prayer is also assailed because it did not leave the allowance of interest on the check to the discretion of the jury, but we do not think this objection well founded. In *McShane* v. *Howard Bank,* 73 Md. 159, which was a suit upon a cashier's bond to recover for a defalcation, this Court, through JUDGE McSHERRY, said: "Generally speaking, the rule is that interest should be left to the discretion of the jury; but this rule is not without exception, and among its exceptions are cases on bonds, or on contracts, to pay money on a day certain, and cases where the money has been used. Ridgaway improperly and unlawfully took and applied to his own use the money of the bank, and his obvious duty is to put the bank in the precise position it would have occupied if the money had not been taken and retained by him. * * * The whole sum and the interest on each item make up the true measure of damages against him for wrongfully taking and detaining or using the money of the bank." In that case it should be observed that the bond was not for payment of money upon a certain day but for the general performance of duty as cashier.

The same principle has been applied in numerous cases.

In *Parsons* v. *Utica Cement Co.,* 66 Atl. Rep. 1024, the suit was on coupon bonds payable on demand at a bank, but no funds were ever placed there. It was held no demand was necessary to recover interest from maturity on each bond and coupon.

In *Flynn* v. *American Banking Co.,* 69 Atl. Rep. 771, it was held that where the directors of a corporation vote to stop payment on its liabilities, or its assets are sequestered by a decree of Court, no demand is necessary to entitle a creditor to interest for delay in payment.

And in *Chemical Nat. Bank* v. *Bailey,* 5 Fed. Cases No. 2635, JUDGE WALLACE said: "If the bank by words or conduct denies the depositor's right to his balance it becomes presently liable to an action without formal demand, and interest is recoverable as damages."

The same rule was laid down in *In re East of England Banking Company,* 6 L. R. Eq. Cases, 368 by VICE-CHANCELLOR MALINS, who said: "Where a promissory note is made payable on demand and the maker of the note publicly announces that he has stopped payment" no demand is required in order to recover interest.

The proof in this case is that the stop-payment order was given January 13th, 1906, and received by the teller of the bank that day, and the prayer required the jury to find that payment was stopped, and therefore interest is recoverable from the date of the order whether the check was then presented or not. Even if it could be shown that interest should have been allowed only from January 16th instead of 13th, the difference would be 25½ cents, and it would be a reproach to the administration of justice to reverse this judgment for so trifling an error in computation merely.

The Court's verbal instruction after reading the plaintiffs' fifth prayer to the jury is not inconsistent, as contended by the appellant, with the proposition asked for by the prayer. It does not change in any manner the rule or measure of recovery laid down in the written prayer. Its obvious purpose was to guard the jury *if their verdict should be based upon that prayer,* against the not uncommon error of finding for a principal sum with interest, instead of calculating and adding the interest to the principal sum. We must credit the jury with a reasonable degree of intelligence, and it is not reasonable to suppose that anyone could have understood this explanation of the rule as to interest, as a direction to find a verdict for the plaintiff, or even as reflecting the opinion of the Court upon the merits of the case. In *Hussey* v. *Ryan,* 64 Md. 433, it was said: "Such an interposition of the Court is often salutary and promotive of a clear under-

standing of the law of the case, especially if its rulings are not clearly understood, or, as sometimes occurs, are contravened or misconstrued in the argument to the jury." Moreover in the written instruction of the Court, given after the argument, the Court expressly stated that "whatever may be paid by Mr. Peck to the receivers on account of this check must be credited to the amount of the judgment in this case, *if one is rendered.*" Thus, whatever inadvertence there may have been supposed to be, in not guarding the previous verbal explanation or instruction, by similar careful language was cured by the last written word of the Court given to the jury as they retired, and carried with them into their room. This instruction will be considered later in its regular order.

The defendant's prayer was properly refused for several reasons. It was misleading. It was well calculated to lead the jury to believe that want of consideration for the check was a material matter in the case, whereas, as we have shown that was wholly immaterial.

It is confused, and misleading in another respect also, in assuming that the check was paid at sometime, when there is not a particle of evidence that it was ever paid; and also in inducing the jury to believe that the stoppage of payment was a valid defence although payment was stopped after the check was deposited and passed to the credit of Peck, and without any evidence that the appellee knew of such stoppage when the deposit was made and the credit given. Moreover there was no evidence legally sufficient to show that the appellee accepted said notes and released the defendant from liability on the check, and if there had been such testimony, the prayer would still have been erroneous in failing to require the jury to find the facts necessary to constitute a legal release, and thus leaving to the jury a question of law. So without further considering other defects in the prayer, as argued by the appellee, we are of opinion it was correctly refused.

This brings us to the Court's written instruction given after the conclusion of the argument before the jury.

It appears from the language of this instruction that some-thing had been said in the course of the argument which the Court deemed, required, or made it appropriate, that the Court should explain the effect of the instructions granted at the instance of the plaintiff, though the record does not disclose what had been said. We must assume that the Court exercised proper discretion in thus interposing, and the case, in this respect, is thus brought within the ruling in *Hussey* v. *Ryan, supra,* as a salutary interposition.

In *Poe's Practice,* sec. 308a, it is said: "It (the Court) has the right at any time during the trial to withdraw abso-lutely any instruction given to the jury, or to qualify or modify it at its discretion, if, upon reflection such course be deemed proper." And in *B. & O. R. R.* v. *Boyd,* 67 Md. 43, JUDGE ALVEY said that when the attention of the Court is called, at any stage of the trial to any alleged ambiguity, or claim that instructions already granted are susceptible of dif-ferent interpretations, "it at once becomes the *duty* of the Court to remove the ambiguity and' to make the meaning of the Court plain."

It is manifest that in the argument something had been said about payments that *might be* made by Peck to the re-ceivers on account *of this check,* and this additional instruc-tion of the Court was designed, as in *Downey* v. *Forrester,* 35 Md. 122, as explanatory of the plaintiff's fifth prayer, and removing any question which had evidently been intimated in argument as to a double recovery upon the check.

The reference in this instruction to the suit as one by the *receivers* of the appellee, is a mere verbal inaccuracy and of no importance whatever, it being impossible that this could in any manner mislead the jury or affect their verdict.

Finding no error in the rulings the judgment will be af-firmed.

*Judgment affirmed with costs to the appel-lee above and below.*