# AFFILIATED DISTILLERS BRANDS CORPORATION *v.* R. W. L. WINE AND LIQUOR COMPANY, INC.

[No. 168, October Term, 1956.]

(Two Appeals in One Record)

510

*Decided June 5, 1957.*

*Motion for rehearing filed July 5, 1957, denied July 24, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Raphael Walter* and *M. Peter Moser,* with whom were *Nyburg, Goldman & Walter* on the brief, for the appellant and cross-appellee.

*William D. Rogers,* with whom were *Franklin Goldstein, Arnold, Fortas & Porter* and *Burke, Gerber & Wilen* on the brief, for the appellee and cross-appellant.

PRESCOTT, J., delivered the opinion of the Court.

On August 18, 1955, the appellant, Affiliated Distillers Brands Corp. (hereinafter called "Affiliated") brought suit against the appellee, R. W. L. Wine and Liquor Co., Inc., (hereinafter called "RWL") under summary judgment procedure, to recover the sum of $423,255.97, claiming this to be the principal balance then due on a $600,000 demand promissory note, together with interest on this unpaid balance. Subsequent to the institution of suit, Affiliated granted RWL credits in the aggregate amount of $53,257.63, leaving a balance due in the amount of $369,998.34. Thereafter, RWL made three payments on account of its indebtedness, aggregating $367,409.19, so that of the original amount due, not considering interest, all but $2,589.15 was paid by RWL prior to trial. At the time of each of these payments, stipulations were filed in the case, in which Affiliated reserved the right to make claim for interest upon the amounts so paid, and on any additional sums recovered by judgment.

The case was tried by the Court without a jury, and judgment was rendered on October 1, 1956, in favor of Affiliated for the principal balance of $2,589.15 claimed; but Affiliated's claim for interest in the amount of $5,339.79 was rejected. This appeal is taken from the trial Court's denial thereof.

There is also a cross-appeal by RWL. It claimed at the trial that it was entitled to a credit of the sum of $2,589.15 from Affiliated for taxes and insurance costs that RWL had been required to expend to protect special excess inventories of Affiliated's products forced on it by Affiliated shortly before its franchise was terminated. The trial Court disallowed this claim, and RWL also noted an appeal.

Affiliated, a corporation of the State of New York, is a wholly owned subsidiary of Schenley Industries, Incorporated, ("Schenley"), and was and is engaged in the distribution and sale of alcoholic beverages produced or imported by other subsidiaries of Schenley. Since its organization, and up to the present time, Affiliated has conducted its business in its own name and under the names of its separately organized divisions.

In April of 1950, RWL, a Maryland corporation, was ap-

pointed exclusive distributor in Maryland of certain alcoholic beverages produced or imported by subsidiaries of Schenley. At the time of the appointment of RWL as distributor, no time was fixed for the termination of such distributorship. From 1950 until the termination of RWL's franchise, Affiliated extended substantial credits to finance RWL's regular and special inventory purchases. As a matter of mechanics, the indebtedness of RWL to Affiliated, from time to time, was brought down to round numbers by partial payments, and the remainder memorialized by the issuance of a promissory note. RWL consistently enjoyed terms in excess of thirty days to make arrangements for the continuation of this outstanding indebtedness; and at no time, during the entire period of the franchise, did Affiliated insist that the account be liquidated, or that interest be paid on it.

In April of 1955, Affiliated unilaterally terminated the franchise effective July 5, 1955. It could not appoint another distributor until after July 5, 1955, and it was to the interest of both parties that RWL stay in business in the Baltimore area until the new distributor could take over. RWL performed its responsibility of selling Schenley products up until June 30, 1955.

On May 31, 1955, at a time when both parties knew RWL would be out of business in one month, they renegotiated the indebtedness through a cash payment and issuance of a note from RWL to Affiliated for $600,000. This new note contained no provisions with respect to interest, with respect to the due date other than it was payable on demand, or with respect to its liquidation.

During June, 1955, RWL received over $300,000 of additional merchandise, thereby increasing its debt to Affiliated. On July 5, 1955, when RWL closed its doors, it was indebted to Affiliated for some $955,000 as disclosed by computations and stipulations effected some months later. On that day, and the day following, it also had a large inventory of plaintiff's products. Neither party knew the exact amount, either of the gross indebtedness, or of the debt minus the value of this inventory on July 6, 1955, nevertheless, Affili-

514

ated claims (denied by RWL) to have made demand for payment on that date.

In June, 1955, Schenley had requested that the inventory of RWL be returned and agreed to credit the returns to RWL's indebtedness. RWL began to ship the inventory out on July 5, 1955. There is testimony in the record that the time for shipments of the returned merchandise was regulated solely by Affiliated and its new distributor. The actual transfer of merchandise took 43 days, the final shipment being made on August 18, 1955. As a result of these returns, RWL subsequently received credits totaling approximately $586,000. The final credit was not received until October 21, 1955.

The delay in liquidating the account was caused by the fact that after the termination of the distributorship, there was much to be done. RWL, in spite of the fact that the bulk of its employees left it to follow the line, and work for the new distributor, had to transfer over $580,000 worth of merchandise and straighten out its affairs, somewhat jumbled by the unilateral termination of the distributorship. Affiliated did not send any credit memoranda to RWL until it attached them to the declaration when suit was filed on August 18, 1955, and those that were attached were illegible. Over $52,000 of credits were not received until after August 18, 1955. The process of liquidating the account was not an easy one, but was, in fact, quite an intricate one. There were discrepancies between the accounts of Affiliated and RWL with reference to the inventories of returned merchandise, some with reference to quantity and others concerning prices. There were also matters such as the computation of freight to be determined. The testimony of Mr. Hertzbach on both direct and cross-examination indicates the difficulty of finding out the net amount owing after returns of the stock on hand. From August 30, 1955, the date when Affiliated agreed to dispense with depositions and to have accountants from both sides meet to work out their differences, it still took until September 19, 1955, to reach a net figure. The bulk of the debt was paid the next day.

On September 20, 1955, two other items on its claim were

not paid to Affiliated because of situations alleged by RWL to have been created by Affiliated and its distributors. The first item in the amount of $73,465.10 resulted from the fact that though the parties anticipated that the State of Maryland would quickly refund to RWL the amount it had paid for stamps on merchandise transferred to a new distributor of Affiliated, the State did not make the refunds until October 28, 1955. Immediately upon receiving credit from the State the $73,465.10 was paid. The second item, $1,445.00, resulted from the delay by a distributor of Affiliated to pay defendant for merchandise shipped to it at the request of Affiliated.

We have set forth the facts somewhat in detail to show the entire situation, and because Judge Byrnes found as a fact that "Extensive credit was given to RWL by Affiliated over a long period of time with no provision for, or expectation of, receiving interest. It was not until litigation * * * was instituted or threatened, that Affiliated countered with the interest demand", which we will refer to later.

Affiliated's claim for interest is summarized as follows:

| | |
|---|---|
| June 30, 1955—Demand note of RWL | $600,000.00 |
| June 30, 1955—Bal. due on open account of RWL | 356,147.40 |
| TOTAL AMOUNT DUE | $956,147.40 |
| Credits allowed prior to 9/20/55 | 586,149.06 |
| | $369,998.34 |

| PAYMENTS made by RWL | | |
|---|---|---|
| 9/20/55 | $292,499.09 | |
| 10/29/55 | 73,465.10 | |
| 11/15/55 | 1,445.00 | |
| Judgment, Oct. 1, 1956 | 2,589.15 | $369,998.34 |

Elements of claimed interest:
1. From July 6, 1955 (alleged date of demand and

refusal) to Sept. 20, 1955 (date of payment of
$292,499.09). Int. on $369,998.34 ........... $4,682.70
2. From Sept. 21, 1955 to Oct. 29, 1955 (date of
payment of $73,465.10). Int. on $77,499.25     496.85
3. From Oct. 30, 1955, to Nov. 15, 1955 (date of
payment of $1,445). Int. on $4,034.15 ........     11.28
4. From Nov. 16, 1955 to Oct. 1, 1956. Int. on
$2,589.15 ...............................     148.96

TOTAL          $5,339.79

Affiliated contends that it had a right to apply the credits due RWL for returned inventories to either the note or to the closed account, as RWL failed to direct its application to either the one or the other; that Affiliated had elected to apply these credits first to the account, which was completely wiped out, and the balance to the payment of the note; that this left a balance due on a demand note upon which payment had been demanded on July 6, 1955, and therefore it was entitled to interest from that date. Affiliated further claims that even though the indebtedness due from RWL was on open account, it was a definite sum due for goods sold and delivered at an agreed price, and, therefore, it is entitled to interest; and that, even if the credits due RWL were an integral part of Affiliated's claim, the net amount due it was an ascertainable sum, and it is still entitled to interest.

In the view we take of the case, it is unnecessary to answer these contentions separately. The law in Maryland with reference to interest is well settled. The general rule is that interest should be left to the discretion of the jury, or the Court when sitting as a jury. However, this general rule is subject to certain exceptions that are as well established as the rule itself. Among the exceptions are cases on bonds, or on contracts, to pay money on a day certain, and cases where the money has been used. If the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due. *Weant v. Southern Tr. Co.,*

112 Md. 463, 473, 77 A. 289; *Picking v. Local Loan Co.,* 185 Md. 253, 44 A. 2d 462. Cf. 30 *Am. Jur., Interest,* par. 7; *Williston on Contracts,* Vol. 5, pars. 1410, 1413; *Sedgwick on Damages,* par. 301; *Maryland Lumber Co. v. White,* 205 Md. 180, 197, 198, 107 A. 2d 73; *Shipley v. Meadowbrook Club,* 211 Md. 142, 151, 126 A. 2d 288.

Here we have a corporation that had given extensive credit to one of its distributors for a five year period, without charging interest. In April, 1955, it notified the distributor of the termination of the distributor's franchise as of July 5, 1955. On May 31, 1955, it accepted a demand note of $600,000 from the distributor, and thereafter extended additional credit of over $300,000. During June of 1955, realizing the franchise would expire within about three weeks and RWL had on hand a large inventory of its products (worth about $600,000), the parent company suggested that this inventory be returned, and proper allowance therefor would be made on the indebtedness of RWL. This was agreed to, and RWL made prompt payments of all indebtednesses due Affiliated, excepting two claims, as soon as the amounts were ascertained or due.

The weaknesses of Affiliated's argument lie in the fact that neither it nor RWL knew the gross or net indebtedness of RWL on July 6, 1955, (this was not ascertained until several months later); that as soon as the balance was struck between them it was paid in full by RWL, with the exception of three items;[1] that, while it claims demand was made upon RWL to pay in full on July 6, 1955, its witness testified his "approach at that time was rather the same it had been on other occasions before, the question of *stimulating* payment to us against the account" (emphasis supplied); and, that a reasonable consideration of all of the evidence, as found by Judge Byrnes, discloses that Affiliated did not make any provision

---

1. These items have been mentioned before: (1) for State revenue stamps paid by RWL; (2) for failure of a distributor of Affiliated to pay RWL for merchandise shipped at Affiliated's request; and (3) a disputed claim for taxes and insurance on excess inventory held by RWL, the subject of its cross-appeal.

for, nor have any expectation of receiving, interest until litigation was started or threatened.

Affiliated lays great stress upon a letter dated July 7, 1955, received by Schenley from RWL's attorney, in which letter RWL's approximate indebtedness to Schenley was acknowledged. The letter then asserted certain alleged claims by RWL against Schenley, and it stated that any balance shown to be due Schenley promptly would be paid. At this time, interest had not been mentioned, and the letter made no reference to it. At the trial of this case below in April of 1956, the parties filed a stipulation that eliminated from consideration therein, but reserved to RWL the right to prosecute in the future, RWL's alleged counter claims. RWL, as of the date of trial, already had paid all of the claims made by Affiliated against it with the exception of one item, the sum represented by its claim for taxes and insurance on the alleged "forced" inventory. We are unable to discover in the letter any controlling significance with reference to RWL's liability for the payment of interest.

We conclude that under the above circumstances the trial Court was correct in refusing Affiliated's claim for interest on the sum of $292,499.09 from July 6, 1955, until September 20, 1955. And we, likewise, think the trial judge was right in refusing interest on the sum of $1,445, which represented merchandise shipped by RWL to a new distributor of Affiliated, at Affiliated's request.

This leaves for consideration the question of interest on two other claims, but, before determining them, we shall dispose of the cross-appeal. As stated at the beginning, RWL noted a cross-appeal. It is based upon RWL's claim that the parent company "forced excessive special inventories" of "slow moving" goods upon it in late 1954 and early 1955; that RWL was forced to pay the personal property taxes and insurance thereon; and, that the termination of its franchise as of July, 1955, did not allow it sufficient time to "recoup" these expenditures. This contention does not require, nor deserve, detailed consideration, because it is based upon a false premise. The evidence offered by RWL discloses that it was "asked" to take on these inventories, but it was not

"directed" or "coerced" in so doing. RWL actually purchased the merchandise. The franchise agreement between the parties is not made a part of the Record Extract; so, insofar as we are informed, unless the parties had agreed upon the return of the alcoholic beverages to Affiliated, RWL would have had the privilege of disposing of its stock on hand of the Schenley line to anyone it desired. We hold the trial Court was correct in disallowing this claim.

We next consider the question of whether the trial Court should have allowed Affiliated interest on the sum of $2,589.15, the amount of the judgment rendered in its favor, from the date the amount ·due Affiliated became definite and certain until the date of trial, as a matter of right. We have outlined above the law with reference to interest. On September 19, 1955, the amount due to Affiliated from RWL became certain, definite and liquidated. Suit had been filed seeking its recovery. This money was due and payable to Affiliated. RWL, however, withheld the same under a claim that this amount was owed to it from Affiliated for taxes and insurance paid by RWL. We have just held that RWL was not entitled to the same; consequently, RWL retained it without legal justification and has had its use since that date. We think that the trial Court should have allowed Affiliated interest at the rate of six *per centum per annum* upon the sum of $2,589.15 from September 19, 1955, until the date of the entry of the judgment.

We noted above that RWL refused to pay Affiliated the sum of $73,465.10 until October 29, 1955. This sum represented the amount that RWL calculated it had paid for State revenue stamps which it had attached to returned merchandise, for which RWL was entitled to a refund from the State. RWL claims it was not required to make payment therefor to Affiliated until RWL actually received the money from the State. However, in making this claim, RWL apparently overlooks the following statement in the letter (which constituted the basis of their contract for the returned inventory) from Schenley to RWL, that says: "It is our understanding that the State of Maryland will *credit your company* for the cost of Maryland tax stamps." (Emphasis supplied).

We think this squarely placed the risk of when the refund would be made on RWL and not on Affiliated. The parties struck a balance between them on September 19, 1955, and on that date the sum due Affiliated from RWL became definite and certain. For reasons stated in the last paragraph above, we conclude that Affiliated is entitled to interest on the sum of $73,465.10 at the rate of six *per centum per annum* from September 19, 1955, until October 29, 1955.

We, therefore, hold that the judgment entered by the trial Court should be modified so as to include interest on the sum of $73,465.10 from September 19, 1955, until October 29, 1955, and interest on the sum of $2,589.15 from September 19, 1955, until the entry of the modified judgment, both to be calculated at the rate of six *per centum per annum*.

> *Judgment affirmed in part and modified in part, and affirmed as modified, and case remanded for the entry of a judgment in accordance with this opinion. Costs below to be paid by RWL, and cost in this court to be paid ½ by RWL and ½ by Affiliated.*