588 A.2d 803

FIRST VIRGINIA BANK

v.

Angelia C. SETTLES, Steven Muenze and Kimberly
Muenze, Carla R. Royal.

Nos. 73, 74 and 75, Sept. Term, 1990.

Court of Appeals of Maryland.

April 17, 1991.

Arnold D. Bruckner (Joyce Ann Bruckner, Bruckner & Bruckner, P.A., Riverdale), all on brief, for petitioners.

Cheryl L. Hystad (Donna B. Bernstein, Baltimore), both on brief, for Legal Aid Bureau, Inc., for amicus curiae.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and MARVIN E. SMITH, Jr. and CHARLES E. ORTH, Jr., Judges of the Court of Appeals (Retired), Specially Assigned.

KARWACKI, Judge.

The respondents in these three cases, which were consolidated for argument in this Court, each purchased a motor vehicle under an installment sales agreement subject to Maryland's Retail Installment Sales Act (RISA), Maryland Code (1975, 1983 Repl.Vol.), §§ 12–601 to 12–636 of the Commercial Law Article. The petitioner, First Virginia Bank, is the assignee of the seller in each case. The respondents each defaulted on their promises to make in-

stallment payments on their purchases, and the Bank repossessed the motor vehicles and resold them as permitted by the agreements and RISA. The proceeds of each sale were insufficient to satisfy the balance due by the respective respondents, and the Bank then brought suit in each case to recover the deficiency. We must decide the extent to which the Bank is entitled to prejudgment interest on its claims.

## I.

Angelia Settles purchased a used automobile on February 29, 1988. After making a cash down payment, she agreed to pay the balance due the seller, $7,699, together with finance charges at an annual rate of 12.9% in 41 equal installments. The installment sales agreement which she executed was immediately assigned without recourse by the seller to the Bank.

After Settles defaulted on September 15, 1988, the Bank repossessed the automobile on October 27, 1988. It was sold at public auction on November 29, 1988. The proceeds of that sale, a return of finance charges which accrued after September 15, 1988, and the proceeds of certain insurance claims were credited against the balance due by Settles to the Bank. Settles was charged with certain expenses related to the repossession and sale, making the adjusted balance due the Bank $3,016.41.

The Bank filed suit on July 20, 1989, in the District Court of Maryland, sitting in Prince George's County, requesting judgment in the amount of $3,016.41 plus prejudgment interest from September 15, 1988, at the rate set forth in the installment sales agreement, 12.9%, and attorney's fees. When Settles did not give notice of an intention to defend the suit, the District Court, on November 10, 1989, without holding a hearing, entered judgment on affidavit in favor of the Bank pursuant to Maryland Rule 3-306.[1] That judgment, however, did not include any prejudgment interest.

---

1. Rule 3-306 provides in pertinent part:

The Bank appealed that denial to the Circuit Court for Prince George's County which affirmed the judgment.

On September 27, 1986, Steven and Kimberly Muenze executed an installment sales agreement for the purchase of a new truck, which agreement was immediately assigned without recourse by the seller to the Bank. The agreement required that the balance due on the purchase, $13,215.41, together with a finance charge at an annual rate of 12.75% would be paid by the buyers in 60 monthly payments. The Muenzes defaulted on December 15, 1988, and the truck was repossessed by the Bank on December 20, 1988. The Bank resold the truck on January 17, 1989.

The balance then due the Bank was reduced by the proceeds from the resale, a refund of finance charges

---

(a) **Time for Demand—Affidavit and Supporting Documents.**—In an action for money damages a plaintiff may file a demand for judgment on affidavit at the time of filing the complaint commencing the action. The complaint shall be supported by an affidavit showing that the plaintiff is entitled to judgment as a matter of law. The affidavit shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. The affidavit shall be accompanied (1) by supporting documents or statements containing sufficient detail as to liability and damages, including the precise amount of the claim and any interest claimed; and (2) if the claim is founded upon a note, security agreement, or other instrument, by the original or a photocopy of the executed instrument, or a sworn or certified copy, unless the absence thereof is explained in the affidavit. If interest is claimed, the plaintiff shall file with the complaint an interest worksheet.

(b) **Subsequent Proceedings.**— ...

(2) *When No Notice of Intention to Defend Filed.*—If the defendant fails to file a timely notice of intention to defend, the plaintiff need not appear in court on the trial date and the court may determine liability and damages on the basis of the complaint, affidavit, and supporting documents filed pursuant to section (a) of this Rule. If the defendant fails to appear in court on the trial date and the court determines that the pleading and documentary evidence are sufficient to entitle the plaintiff to judgment, the court shall grant the demand for judgment on affidavit. If the court determines that the pleading and documentary evidence are insufficient to entitle the plaintiff to judgment on affidavit, the court may deny the demand for judgment on affidavit or may grant a continuance to permit the plaintiff to supplement the documentary evidence filed with the demand.

accruing after December 15, 1988, and the rebate of certain insurance and warranty costs. The expense of repossession and sale were added, resulting in an adjusted balance due the Bank by the Muenzes of $3,463.75.

The Bank brought suit on June 7, 1989, in the District Court in Prince George's County claiming $3,463.75, plus prejudgment interest from December 15, 1988, at the contract rate of 12.75%, and attorney's fees. When no notice to defend this suit was filed, on October 11, 1989, the Bank was summarily granted judgment on affidavit pursuant to Md. Rule 3–306. The District Court disallowed any claim for prejudgment interest. On the Bank's appeal to the Circuit Court for Prince George's County, the District Court judgment was affirmed.

The case involving Carla R. Royal followed a similar course. She executed an installment sales agreement for the purchase of a used automobile on September 5, 1985, which the seller immediately assigned without recourse to the Bank. The agreement required that she pay the balance of the purchase price, $10,267.90 together with a finance charge at an annual rate of 15.50% in 48 monthly installments. When she defaulted on March 15, 1987, the automobile was repossessed on June 3, 1987, and resold by the Bank on June 30, 1987. The balance then due the Bank under the installment sales agreement was reduced by the proceeds of the resale, a refund of finance charges accruing after March 15, 1987, and the refund of certain insurance costs. The expenses of repossession and sale were added, leaving an adjusted balance due by Royal of $6,019.73.

The Bank, on August 19, 1988, sued Royal in the District Court, in Prince George's County, seeking judgment in the amount of $6,019.73, plus prejudgment interest from March 15, 1987 and attorney's fees. Royal did not defend and on November 11, 1989, without holding a hearing, the District Court granted judgment on affidavit in favor of the Bank pursuant to Md.Rule 3–306. Because that judgment did not include any prejudgment interest, the Bank appealed to the

Circuit Court for Prince George's County which affirmed the judgment.

We granted the Bank's petition for a writ of certiorari to review the judgments of the Circuit Court in each of these cases. Md.Code (1974, 1984 Repl.Vol.), § 12–305 of the Courts and Judicial Proceedings Article.

## II.

When a buyer under an agreement subject to RISA defaults, § 12–624 permits the seller or its assignee to repossess the goods sold. Section 12–626 governs the resale of the repossessed goods. Where, as in the cases before the Court, the purchase price of goods sold under the agreement exceeded $2,000, the seller or its assignee has the right to resell the goods at public or private sale. Section 12–626(e)(1)(ii). The proceeds of that resale shall be applied to:

(i) The actual and reasonable cost of the sale;

(ii) The actual and reasonable cost of retaking and storing the goods; and

(iii) The unpaid balance owing under the agreement at the time the goods are repossessed. Section 12–626(e)(2). "... any remaining balance shall be paid to the buyer, ..." § 12–626(e)(3).

Section 12–626(e)(4) provides that if the proceeds of the resale are insufficient to pay the items listed in § 12–626(e)(2)

... the buyer is liable for the deficiency if:

(i) The agreement provides for liability for a deficiency; and

(ii) The holder has complied with all requirements of this subtitle, including the notice requirement of § 12–624(d).

In *Union Trust Co. v. Tyndall,* 290 Md. 102, 428 A.2d 428 (1981), we held that the "unpaid balance owing under the agreement" specified in § 12–626(e)(2)(iii) should not include finance charges accruing after the date of the resale

of the repossessed goods.[2]   In so concluding, we equated
the resale after repossession with prepayment by the buyer
of all or part of the balance due under the installment sales
agreement, in which case § 12–620 entitled the buyer to a
refund of the unearned finance charge.  *Id.* at 112, 428 A.2d
at 433.   Judge Smith, speaking for the Court, reasoned:

> The statute obviously contemplates that the longer the
> period of time over which the deferred balance will be
> paid, the greater is to be the total amount of the finance
> charge.   If the buyer elects to prepay all or any part of
> the unpaid time balance he is entitled to a readjustment
> of the finance charge.   As we have indicated,
> § 12–626(e)(2) provides for the order of payment of the
> proceeds of sale including "[t]he unpaid balance owing
> under the agreement at the time the goods are repos-
> sessed."   Then subsection (e)(3) provides that after appli-
> cation of the proceeds and deposit in accordance with ¶ (2)
> of that subsection, "any remaining balance shall be paid
> to the buyer."   It surely must have been contemplated by
> the General Assembly in this consumer protection statute
> that the balance to be satisfied would be determined by
> treating the sale and resulting payment as a prepayment
> under § 12–620.   To hold otherwise would be to reach an
> absurd, unreasonable, or illogical result, one inconsistent
> with common sense.   Our cases tell us this should be
> avoided.   See, e.g., *Cider Barrel Mobile Home v. Eader,*
> 287 Md. 571, 583, 414 A.2d 1246 (1980); *Curtis v. State,*
> 284 Md. 132, 149, 395 A.2d 464 (1978); *Grosvenor v.*
> *Supervisor of Assess.,* 271 Md. 232, 242, 315 A.2d 758

---

**2.**  The Bank in the instant case credited finance charges accruing after
the date of default to the buyers.   It did so consciously, according to
its reply brief, because "[t]his procedure allowed a sum certain known
at the date of default, to be reduced by any payments and rebates
from any source and their corresponding adjustments required by
RISA, and by running simple interest from that date forward, fairly
provided for the Bank to keep that portion of the finance
charge/interest which was still being earned."   Whatever the merit in
its reasoning, by crediting the buyers with all finance charges earned
after the date of default, the Bank gave the buyers a larger credit than
required.

(1974); and *Coerper v. Comptroller,* 265 Md. 3, 6, 288 A.2d 187 (1972). Having reached that point in our reasoning, it certainly must follow that the sum to be satisfied and hence the sum used in determining the deficiency for which the buyer is liable under § 12–626(e)(4) if the proceeds and deposits are insufficient must be one determined using the same type of computation. This was a four year contract. Under Maryland Rule 642 judgments bear interest. To hold as Union Trust would have us hold would permit the potentially absurd result of a default, repossession, and judgment for the balance within several months of the execution of the contract, thereby permitting interest on a judgment the amount of which would include more than three years of unearned finance charges. Given the fact that whether one talks in terms of finance charges or interest one is speaking economically in terms of compensation for the use of capital and the further fact that this statute obviously was intended to protect unsophisticated consumers such as Tyndall (who confessed that he had trouble understanding the contract), we hold that when the General Assembly in 1965 changed the statute so as to render buyers such as Tyndall potentially liable for a deficiency it could not and did not intend to make such persons responsible for unearned finance charges.

*Tyndall* is dispositive of the Bank's contention in the instant cases that it was entitled to recover prejudgment interest on the deficiency due by the buyer at the same rate as the finance charge provided in the agreement under which each motor vehicle was sold. The Bank is not entitled to recover finance charges beyond the date of resale of the repossessed goods as prejudgment interest just as it is not entitled to recover such charges as part of the "unpaid balance owing under the agreement" pursuant to § 12–626(e)(2).

### III.

Alternatively, the Bank asserts that the District Court erred in not awarding prejudgment interest at the

legal rate from the date that the buyers defaulted. Since RISA is silent on the issue of whether prejudgment interest may be awarded in the suit to recover the deficiency for which the buyer is liable under § 12–626(e)(4), we look to the law governing recovery of prejudgment interest generally.

We observed in *I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 16–17, 344 A.2d 65, 75 (1975):

> Generally, interest is not an inseparable and invariable incident of claims for money or unliquidated accounts, *City Pass. Rwy. Co. v. Sewell*, 37 Md. 443, 452 (1873), it is recoverable as a matter of right under contracts in writing to pay money on a day certain, such as bills of exchange or promissory notes, *Isle of Thye Land Co. v. Whisman*, 262 Md. 682, 708–09, 279 A.2d 484, 498 (1971); *Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp.* [256 F.2d 946 (4th Cir.1958)], *supra; Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc.*, 213 Md. 509, 516, 132 A.2d 582, 586 (1957); in actions on bonds, *Mullen [Mullan] Contracting Co. v. International Business Machs. Corp.*, 220 Md. 248, 262, 151 A.2d 906, 914 (1959), *Kasten Constr. Co. v. Anne Arundel County*, 262 Md. 482, 489–90, 278 A.2d 282, 286–87 (1971); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra;* in actions under contracts providing for the payment of interest, *Isle of Thye Land Co. v. Whisman, supra,* see *Robt. C. Herd Co., Inc. v. Krawill Mach. Corp., supra;* in cases where the money claimed has been actually used by the other party, *Charles County Broadcasting Co., Inc. v. Meares*, 270 Md. 321, 332, 311 A.2d 27, 34 (1973); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra;* and in cases upon sums payable as rent, *Eidelman v. Walker & Dunlop, Inc.*, 265 Md. 538, 545, 290 A.2d 780, 784 (1972). *See also Brown v. Bradshaw*, 245 Md. 524, 539, 226 A.2d 565, 573 (1967).

And in *Sloane, Inc. v. House & Associates*, 311 Md. 36, 53–54, 532 A.2d 694, 702–03 (1987) we commented:

Generally, prejudgment interest is a matter left to the discretion of the court when sitting as a jury. *Id. [I.W. Berman Prop. v. Porter Bros*, 276 Md. 1] at 18, 344 A.2d [65] at 75. This Court has, on occasion, reversed a trial judge's discretionary determination not to allow prejudgment interest, but in those instances the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date. *See Atlantic States Constr. Co. v. Drummond & Co.*, 251 Md. 77, 85, 246 A.2d 251, 255 (1968); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co.*, 213 Md. 509, 519, 132 A.2d 582, 586 (1957).

*Atlantic States Constr. Co. v. Drummond & Co., supra,* involved a suit on a subcontract for paving against the general contractor of a shopping center project. The paving was completed, and in accordance with the subcontract payment was due the subcontractor no later than September 18, 1966. The general contractor failed to make payment, and the subcontractor brought suit. The summary judgment rendered in favor of the subcontractor on October 11, 1967, allowed interest from the date of the judgment. Upon the subcontractor's appeal, we modified the judgment, allowing prejudgment interest on the balance due the subcontractor from September 18, 1966.

In *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., supra,* a seller of alcoholic beverages brought suit against the company which had been its Maryland distributor for five years. In April of 1955, the seller notified the distributor that its franchise would be terminated as of July 5, 1955. On that date the distributor owed the seller approximately $955,000. The seller agreed to credit the return of inventory of its products held by the distributor to that indebtedness. The return of the inventory and the computations of the credit due on the indebtedness were not completed until September 19, 1955. The distributor unjustifiably delayed in its payment of $73,465.10 of the

balance due the seller until October 29, 1955. Thereafter the seller brought suit against the distributor for $2,589.15 still due by the distributor. On October 1, 1956, the trial court, sitting without a jury, entered judgment in that amount but declined to allow any prejudgment interest. We modified the judgment on appeal by the seller, holding that the seller was entitled to prejudgment interest on $73,465.10 from September 19, 1955 until October 29, 1955, and on $2,589.15 from September 19, 1955 until October 1, 1956.

The agreements executed by the buyers in the instant cases all contained an identical provision by which the buyers promised:

If I am in default, you may consider all my remaining payments to be due and payable, without giving me notice. I agree that your rights of possession will be greater than mine. I will deliver the property to you at your request, or you may use lawful means to take it yourself without notice or other legal action. You may sell the property after giving proper notice to my address listed on the front of this agreement. You may apply the proceeds of the sale toward what I owe you. I'll pay the difference between the sale proceeds and what I owe you. You may add to what I owe you any fees paid to a public official for the costs of repossession and sale or for enforcing my obligations. I will also pay you for your court costs and reasonable attorneys' fees (equal to 15% of the unpaid balance if the cash price is $25,000 or less.)

Consequently, under § 12–626(e)(4), which we quoted above, a necessary prerequisite to each buyer's liability for the deficiency was present. That liability, however, was not for a certain, definite, and liquidated sum until after the resale following repossession when the application of the credits due the buyer and the charges assessed against him or her were applied to the unpaid balance owed by the buyer under the agreement. § 12–626(e)(4). Until that occurred and the buyer was furnished a written statement which showed the disposition of the proceeds of the resale, as required by

§ 12–626(f), payment of the deficiency was not due by the buyer. It was only then that prejudgment interest began to accrue.

The records in the cases *sub judice* are inadequate for us to determine the date on which the several buyers' deficiencies were established. No hearing was conducted in the District Court in any of the cases which were resolved by judgment on affidavit pursuant to Md.Rule 3–306. For that reason, we shall vacate the judgments of the Circuit Court for Prince George's County and remand the cases to the District Court with instructions to vacate the judgments rendered against the buyers and to permit the Bank "to supplement the documentary evidence filed with the demand" for prejudgment interest in each case. Md. Rule 3–306(b)(2).

Finally, any prejudgment interest which is awarded should be at the rate of 6% per annum. Art. III, § 57 of the Constitution of Maryland provides:

The Legal Rate of Interest shall be *Six per cent, per annum;* unless otherwise provided by the General Assembly.

The General Assembly has not provided otherwise with regard to a buyer's liability for a deficiency under § 12–626(e)(4). *Cf. Federal Sav. & Loan Ins. Corp. v. Quality Inns,* 876 F.2d 353, 359 (4th Cir.1989).

JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASES REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND THE CASES TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY PETITIONER AND ONE HALF BY RESPONDENTS.

ELDRIDGE, Judge, dissenting:

In awarding First Virginia Bank prejudgment interest on deficiencies owed to it by consumers under the Retail Installment Sales Act (RISA), Maryland Code (1975, 1990

Repl.Vol.), § 12–626(e)(4) of the Commercial Law Article, the majority departs from precedent and ignores clear indications of the General Assembly's intent.

(1)

This Court, a decade ago in *Union Trust Co. v. Tyndall,* 290 Md. 102, 428 A.2d 428 (1981), provided an exhaustive analysis of RISA, stating that "whether one talks in terms of *finance charges or interest* one is speaking economically in terms of compensation for the use of capital" and holding unequivocally that neither may be imposed on the buyer after the sale of the repossessed goods. 290 Md. at 113, 428 A.2d at 433 (emphasis added). The majority quotes extensively from *Tyndall* but misses the point of the case when, in one breath, it disallows First Virginia Bank prejudgment interest on the deficiencies owed at the same rate as the finance charge provided in the contracts, but, in the next breath, allows an award of prejudgment interest at the legal rate. Nothing in the *Tyndall* opinion limited the holding of that case to the interest rate provided in the agreement. Furthermore, such limitation is inconsistent with the reasoning in *Tyndall.*

The majority's holding today improperly erodes the protection of RISA as interpreted by this Court in *Tyndall,* implying that, in *Tyndall,* we misinterpreted the Legislature's purpose when it amended RISA in 1965. The majority, however, overlooks the principle that "the General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981). *See also, Nationwide v. USF & G,* 314 Md. 131, 143–144, 550 A.2d 69, 75 (1988); *Farmers & Merchant Bank v. Schlossberg,* 306 Md. 48, 60, 507 A.2d 172, 178 (1986). If this Court's interpretation of RISA in *Tyndall* was other than what the General Assembly intended, then the Legislature presumably would have amended the Act in the ten years since the *Tyndall* case was decided.

This presumption is strengthened by the Legislature's amending § 12–626(e) in 1984 but not changing the holding in *Tyndall. See Williams, supra,* 292 Md. at 210, 438 A.2d at 1305; *Nationwide, supra,* 314 Md. at 143–144, 550 A.2d at 75; *Frank v. Storer,* 308 Md. 194, 203, 517 A.2d 1098, 1102–1103 (1986).

This Court emphasized in *Tyndall* that the purpose of RISA "obviously is to protect unsophisticated buyers" and that the statute "is a carefully constructed and carefully thought out piece of consumer protection legislation enacted by the Maryland General Assembly many years before the more recent concerns relative to consumer protection." 290 Md. at 105, 110, 428 A.2d at 429, 432. *See also,* 63 Op.Att'y Gen. 92 (1978). Nevertheless, the majority today has accommodated First Virginia Bank, the holder in this case, at the expense of the consumers, the very class of individuals the Act was enacted to protect. For the most part, the majority overlooks the fact that this case is governed by statute and that our function is to ascertain the General Assembly's intent. After quoting *Tyndall* and stating that the case is dispositive with regard to the rate of interest set forth in the agreement, the majority relies on cases having nothing to do with RISA in order to justify awarding First Virginia Bank prejudgment interest.

### (2)

Moreover, although I am convinced that RISA does not allow prejudgment interest on deficiency judgments, at the very least such interest should only be awarded where it is specifically provided for in the installment sales contract. The 1965 Amendments to RISA, if nothing else, provided that, in connection with a deficiency judgment, the buyer would only be liable for what was provided for in the contract. § 12–626(e)(4). *See* 63 Op.Att'y Gen. 92 (1978). It seems obvious that prejudgment interest on a deficiency judgment should not be awarded in the cases before us because the agreements did not so provide.

(3)

Finally, if prejudgment interest were allowable under § 12–626(e)(4) in accordance with common law principles, then it should be left to the discretion of the trial court to decide whether or not to award it. *I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 17–18, 344 A.2d 65, 75 (1975) ("[t]he law in Maryland with reference to interest is well settled. The general rule is that interest should be left to the discretion of the [trial court]," *quoting Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co.*, 213 Md. 509, 132 A.2d 582 (1957)). Nonetheless, in cases involving liquidated sums prejudgment interest is generally allowed. *Ibid.* For a sum to be liquidated, it is not necessary that the exact amount of money owed be expressly stated in the contract; however, the sum must be capable of ascertainment at the time of breach. 5 A.L. Corbin, *Corbin on Contracts* § 1046 (1964). *See I.W. Berman Prop. v. Porter Bros., supra*, 276 Md. 1, 344 A.2d 65; *Atlantic States Constr. Co. v. Drummond & Co.*, 251 Md. 77, 246 A.2d 251 (1968); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., supra*, 213 Md. 509, 132 A.2d 582.

The majority today holds that prejudgment interest must be awarded, as a matter of law, where at the time of breach the sum owed is not known and can not be ascertained. In the case before us, at the time of breach the amount owed by the buyers could not be calculated until the sale of the collateral, an event occurring subsequent to breach. The Maryland cases cited by the majority do not require the allowance of prejudgment interest under these circumstances.

CHASANOW, J., has authorized me to state that he dissents for the reasons set forth in Part (3) of this opinion.