## ATLANTIC STATES CONSTRUCTION COM-PANY *v.* DRUMMOND & COMPANY, INC.

[No. 321, September Term, 1967.]

*Decided October 9, 1968.*

The cause was argued before Hammond, C. J., and Marbury, McWilliams, Finan and Smith, JJ.

*Eugene R. Simmons,* with whom were *Grizzard & Simmons* and *R. Bowie Clagett* and *Mitchell, Clagett & Euwer* on the brief, for appellant.

*Douglas G. Worrall,* with whom were *William B. Somerville* and *Smith, Somerville & Case* on the brief, for appellee.

McWilliams, J., delivered the opinion of the Court.

The parties are at odds over the meaning of their contract. The amount at stake is $20,701.63. There is disagreement also as to the date from which interest ought to be calculated. Our recital of the undisputed facts is based on a statement agreed to by counsel pursuant to Maryland Rule 828 g.

In August 1964, Laurel Plaza, Inc. (owner) contracted with appellant [1] (Atlantic) for the construction of a shopping center at Laurel, in Prince George's County. In March 1965, Atlantic contracted [2] with appellee (Drummond) for the installation of the paving. Article XII of the contract reads as follows:

"Article XII — Contractor [Atlantic] agrees to pay Subcontractor [Drummond] for said work ........ Dollars, (any exchange shall be borne by Subcontractor) subject to additions and deductions as hereinbefore provided, payable as the work progresses, based upon estimates approved by Contractor and Architect, or their authorized representatives, and payment by Owner to Contractor. Contractor may at his option retain 10% of each estimate until final settlement and may withhold payment of any estimate until Subcontractor has furnished Contractor with suitable evidence that he has paid in full for all labor, materials, supplies, tools and equipment used in the work through the date of the estimate. Final acceptance of the work

---

1. Actually the assignee of the original party to the contract, McDonough Construction Company.

2. The contract is on a printed form which was furnished and completed by Atlantic.

performed under this Subcontract, and the final retain-
age withheld will not be due or payable until such
time as the Subcontractor shall have furnished the
Contractor proper and satisfactory evidence, under
oath, that all claims for labor, materials, supplies, tools
and equipment employed or used in the performance
of this Subcontract have been settled. Final payment
shall be made within 30 days after the completion of
the work included in this Subcontract, written accep-
tance of same by the Architect and Owner, or their
authorized representatives and FULL PAYMENT [3]
therefor by the Owner."

Atlantic completed the shopping center and Drummond in-
stalled the paving, all of which was approved and accepted by
the architect and the owner. In the spring of 1966 the owner
ran out of money. Holders of the first trust foreclosed and the
property was sold to a third party. On 18 August, when the
owner's attempt to reorganize under the bankruptcy laws was
denied by the United States District Court, it owed Atlantic a
balance of $84,808.58 and Atlantic owed Drummond $20,701.-
63. Further recovery from the owner was, and ever since has
been, impossible. Neither Atlantic nor Drummond was able to
avail itself of the remedy provided by the mechanics' lien law,
Code, Art. 63 § 1 et seq., because of the superiority of the lien
of the deed of trust which was foreclosed. Drummond filed
suit against Atlantic on 2 March 1967. On 11 October 1967
Judge Loveless granted Drummond's motion for summary judg-
ment, allowing interest from the date of the judgment. Atlantic
has appealed from the entry of the judgment; Drummond's ap-
peal seeks interest thereon from 18 September 1966 instead of
from 11 October 1967.

## I.

Atlantic relies principally on *Peacock Construction Co. v.
West,* 111 Ga. App. 604, 142 S. E. 2d 332 (1965), where the
language of the contract is similar to the language in the case
at bar. Trial in the lower court resulted in a judgment for West,
the subcontractor. The appellate court reversed, stating that

---

**3.** In the contract capital letters (printed) are used for these
two words.

the trial judge should have sustained the demurrers to West's petition (declaration) which, the court pointed out, did not "allege facts showing or excusing written acceptance by the architect and full payment by the owner." Atlantic quotes the following language from the court's opinion:

> "The contract evinces the parties' intentions that plaintiff's work should conform absolutely to the specified architectural standards: Plaintiff was to perform 'in strict accordance with' plans drawn by the architect; all work was to be done under the direction of the architect; plaintiff was to be paid in installments according to progress of the work (in conformity with the required standards) as estimated by the architect. These provisions lend emphasis to our conclusion that the contract contained conditions precedent to liability for final payment to the plaintiff that the payment be made 'within 30 days after the completion of the work included in this sub-contract, written acceptance by the Architect and full payment by the owner.' Written acceptance by the architect in itself is one condition precedent to liability for final payment. See 3A Corbin, Contracts (1960 Ed.) § 650, pp. 112-116; Ann. 54 A.L.R. 1255; Ann. 110 A.L.R. 137, 140.
>
> "In addition, the contract is open to the construction that possibility of the owner's nonpayment on account of plaintiff's work in the construction is the subcontractor's risk rather than that of the prime contractor and that the owner's payment to the prime contractor for the subcontractor's work is yet another condition precedent to defendants' liability, *so that the plaintiff's failure to allege the owner's payment to the prime contractor renders his petition further defective." Id.* at 334. (Emphasis added.)

It will be noticed that the Georgia court chose to base its decision on the inadequacy of West's initial pleading which, of course, explains the absence of any recital of the facts and circumstances. It is not at all clear to us, therefore, that the court would have reached the same result had it been faced with the facts and circumstances of the case now before us. In any event,

we are not persuaded that its decision is apposite here. There was no appeal to the Supreme Court of Georgia.

*Thos. J. Dyer Co. v. Bishop Int'l Eng. Co.,* 303 F. 2d 655 (6th Cir. 1962), presents a set of facts very close to the facts in the instant case. There the contractual provision under consideration was as follows:

> "3. The total price to be paid to Subcontractor shall be . . . . Dollars ($115,000.00) lawful money of the United States, no part of which shall be due until five (5) days after Owner shall have paid Contractor therefor, provided however, that not more than . . . . per cent (90%) thereof shall be due until thirty-five (35) days after the entire work to be performed and completed under said contract shall have been completed to the satisfaction of Owners, and provided further that Contractor may retain sufficient moneys to fully pay and discharge any and all liens, stop-notices, attachments, garnishments and executions. Nothing herein is to be construed as preventing Contractor from paying to the Subcontractor all or any part of said price at any time hereafter as an advance or otherwise." *Id.* at 656.

The court stated what is considered to be the "crucial issue" as follows:

> "* * * whether, as contended by the appellant, paragraph 3 of the subcontract is to be construed as a conditional promise to pay, enforceable only when and if the condition precedent has taken place, which in the present case has not occurred, or, as contended by the appellee, it is to be construed as an unconditional promise to pay with the time of payment being postponed until the happening of a certain event, or for a reasonable period of time if it develops that such event does not take place." *Id.* at 659.

The court then went on to say:

> "It is, of course, basic in the construction business for the general contractor on a construction project

of any magnitude to expect to be paid in full by the owner for the labor and material he puts into the project. He would not remain long in business unless such was his intention and such intention was accomplished. That is a fundamental concept of doing business with another. The solvency of the owner is a credit risk necessarily incurred by the general contractor, but various legal and contractual provisions, such as mechanics' liens and installment payments, are used to reduce this to a minimum. These evidence the intention of the parties that the contractor be paid even though the owner may ultimately become insolvent. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not with the owner. In addition to his mechanic's lien, he is primarily interested in the solvency of the general contractor with whom he has contracted. He looks to him for payment. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties. Section 2100, Page on Contracts, supra.

"In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties it could have been so expressed in unequivocal

terms dealing with the possible insolvency of the owner. *North American Graphite Corp. v. Allan,* 87 U. S. App. D. C. 154, 184 F. 2d 387, 390. Paragraph 3 of the subcontract does not refer to the possible insolvency of the owner. On the other hand, it deals with the amount, time and method of payment, which are essential provisions in every construction contract, without regard to possible insolvency. In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. *Stewart v. Herron,* 77 Ohio St. 130, 149, 82 N. E. 956. To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into. [Citing cases.]" *Id.* at 660-61.

We think the quotation from *Dyer,* set forth above, is an acceptable amplification of what we have thus far indicated the law of this State is or ought to be. In *Fishman Constr. Co., Inc. v. Hansen,* 238 Md. 418, 422, 209 A. 2d 605 (1965), the contractor claimed "that the subcontractor was not entitled to be paid the balance due him until after the owner had approved and accepted the school building and paid the general contractor the balance due it." Judge Horney, for the Court, citing *Dyer,* said:

"Although not involving a motion for summary judgment, it is apparent that the decision of this Court in *Eastern Constructors v. Fox, supra* [231 Md. 15, 188 A. 2d 286 (1963)], is dispositive of the question as to whether the subcontractor was entitled to be paid the balance due him before the owner had paid the general contractor. In that case, where the facts were for the most part the same as those in this case, but

where, unlike the present case, it was specifically agreed that the retained ten per cent was to be paid after final payment was made by the owner, it was held that the subcontractor was entitled to be paid the retained percentage even though final payment had not been made due to a dispute between the owner and the general contractor which did not involve the subcontractor. For similar holdings in other jurisdictions, see *Thos. J. Dyer Co. v. Bishop International Eng. Co.,* 303 F. 2d 655 (6th Cir. 1962) and *Grady v. S. E. Gustafson Constr. Co.,* 103 N. W. 2d 737 (Iowa 1960). The rationale of those cases was to the effect that subcontractual provisions as to retainages—such as those with which we are concerned in the case at bar—are designed to postpone payments due a subcontractor, who was not at fault, for only a reasonable time after the completion of a project and not for such indefinite time as might preclude the subcontractor from bringing suit on a payment bond for work and materials. See Code (1964 Repl. Vol. 8A), Art. 90, § 11 (d). Since it was not shown that the subcontractor was in anyway responsible for the dispute between the owner and general contractor, or the delay resulting therefrom, we hold that the subcontractor was entitled to summary judgment in this case." *Id.* at 423.

We note with interest that in *Darrell T. Stuart Contractor v. J. A. Bridges & Rust-Proofing, Inc.,* 2 Ariz. App. 63, 406 P. 2d 413 (1965) (where the contract provided that the subcontractor was to be paid "within 10 days after the receipt of payments" by the general contractor), the court followed *Dyer* and quoted with approval from the opinion in that case. The court also cited with approval *Fishman Constr. Co. v. Hansen, supra.* To the same effect *see United States ex rel. Moseley v. Mann,* 197 F. 2d 39 (10th Cir. 1952) ; *Trinity Universal Ins. Co. v. Robinson,* 227 Ark. 482, 299 S. W. 2d 833 (1957) ; *Mignot v. Parkhill,* 237 Ore. 450, 391 P. 2d 755 (1964).

We have examined the other authorities relied on by Atlantic but it seems to us that they are either clearly distinguishable

on the facts or that they fall short, one way or another, of supporting Atlantic's contentions.

## II.

Drummond insists (in its cross appeal) that the contract entitled it to receive the full amount of its liquidated claim, without demand, no later than 30 days after payment to Atlantic by the owner, and that it is entitled to interest from that date. It is conceded, of course, that the correct amount of its claim is $20,701.63 and that there are no other obstacles standing in the way of payment. Since it became clear on 18 August 1966 that the owner would never be able to pay, Drummond says its account became due and payable no later than 18 September 1966.

Ordinarily the matter of interest is left to the discretion of the jury or the court sitting without a jury. In *Affiliated Distillers Brands Corp. v. R. W. L. Wine & Liquor Co.,* 213 Md. 509, 516, 132 A. 2d 582 (1957), we said:

> "However, this general rule is subject to certain exceptions that are as well established as the rule itself. Among the exceptions are cases on bonds, or on contracts, to pay money on a day certain, and cases where the money has been used. If the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due. [Citing cases.]"

To the same effect *see Mullan Contracting Co. v. International Business Machs. Corp.,* 220 Md. 248, 151 A. 2d 906 (1959).

Although the judgment will be affirmed, we think Judge Loveless should have allowed interest from 18 September 1966. The case will be remanded for the passage of an order striking out the word "date" and inserting in lieu thereof the words "18 September 1966."

*Judgment affirmed.*

*Case remanded for the passage of the order specified in the opinion. Costs to be paid by the appellant Atlantic States Construction Company.*