680 A.2d 554

**HARTFORD ACCIDENT AND INDEMNITY CO., et al.**

v.

**SHERWOOD BRANDS, INC.**

No. 1442, Sept. Term, 1995.

Court of Special Appeals of Maryland.

June 27, 1996.

Reconsideration Denied Aug. 29, 1996.

98

Hugh E. Donovan (Donovan & Broderick, on the brief), Silver Spring, for Appellants.

Albert D. Brault (Daniel L. Shea, James M. Brault and Brault, Graham, Scott & Brault, on the brief), Rockville, for Appellee.

Argued before BLOOM, FISCHER and SALMON, JJ.

SALMON, Judge.

Appellee, Sherwood Brands, Inc. ("Sherwood"), filed a breach of contract and declaratory judgment action against Hartford Accident and Indemnity Co. and Hartford Fire Insurance Co. (hereinafter referred to collectively as "Hartford") in the Circuit Court for Montgomery County on June 25, 1993. The complaint alleged that Hartford had wrongfully refused to provide a defense for Sherwood when it was sued by Osem Food Industries, Ltd. ("Osem"), in the United States District Court for the Middle District of North Carolina, and had refused to indemnify Sherwood under a comprehensive general liability insurance policy ("CGL" policy) issued to Sherwood by Hartford.

Sherwood's motion for partial summary judgment was granted by Judge James L. Ryan, who held that Hartford, as a matter of law, had a duty to defend Sherwood under the terms of the CGL policy. At a subsequent hearing on December 15, 1994, Judge William P. Turner held that Hartford had a duty to indemnify Sherwood and to pay legal costs incurred by Sherwood in defense of the Osem litigation.

The issue of damages was tried before a jury beginning July 26, 1995. The jury found that all attorneys' fees and defense costs paid by Sherwood, as well as the $100,000 settlement agreed to by Sherwood, were fair and reasonable. Final judgment in favor of Sherwood was entered on August 3, 1995, for the sum of $497,366.22. This timely appeal followed, in which Hartford raises five issues, which have been rephrased for clarity:

I. Was the trial judge legally correct in finding that Hartford had a duty to defend Sherwood under the CGL policy?

II. Was the trial judge legally correct in finding that Sherwood had not made a material misrepresentation of fact at the time the policy was issued?

III. Was the trial judge legally correct in finding that Sherwood's two-and-one-half year delay in notifying Hartford of the Osem litigation did not actually prejudice Hartford?

IV. Was the trial judge legally correct in finding that Hartford was liable for the payment of legal fees and other defense costs incurred by Sherwood prior to notifying Hartford of the Osem litigation?

V. Was the trial judge legally correct in finding that Hartford was liable for the payment of legal fees and other defense costs incurred before the effective date of the CGL policy issued to Sherwood?

Sherwood filed a cross-appeal, which raises an additional issue:

VI. Did the trial judge err in failing to award it prejudgment interest?

## *FACTS*

Sherwood is a North Carolina corporation that markets and distributes food products worldwide. On January 6, 1989, Osem filed suit against Sherwood, alleging that Sherwood was distributing and marketing a soup package virtually identical

in color, design, and graphics to a soup package used by Osem. Osem claimed that Sherwood's intent was to confuse the public and profit from the substantial goodwill associated with Osem's packaging by distributing and marketing the soup package in violation of federal and North Carolina law. Sherwood denied Osem's claims. Appellee, however, did consent to an order, entered on January 31, 1989, in which it agreed to discontinue using the soup package.

On February 27, 1989, Osem filed a "Supplement to Complaint," alleging that Sherwood had altered the soup package that had been the subject of the consent order and that the "altered or 'new' soup package is identical or substantially identical to its 'old' package complained of in the original complaint." Osem alleged that it had first learned of the new package "[w]ithin the past several weeks."

Osem amended its complaint again on August 14, 1989, alleging that Sherwood had "published and disseminated false and misleading statements concerning [Osem] and its 'Gourmet Cuisine' soup products" in a letter dated November 28, 1988. Attached and made a part of the complaint was a copy of the offending letter, which Sherwood had sent to F.W. Woolworth Co.

Sherwood retained William B. Spry, Jr. to defend Osem's claims.[1] Sherwood also retained Lawrence R. Hefter, a trademark specialist with Finnegan, Henderson, Faraday, Garrett & Dunner, in March 1989. In May 1991, Sherwood replaced Mr. Hefter with Floyd A. Gibson, an experienced trademark litigator with Bell, Selzer & Gibson. Shortly after being hired, Mr. Gibson advised Uziel Frydman, Sherwood's sole stockholder, that Osem's claims might be covered by liability insur-

---

1. Mr. Spry and his firm, Allman, Spry, Humphries, Leggett & Howington, were already representing Sherwood Foods, Inc., a sister corporation to Sherwood Brands, in a breach of contract action Sherwood Foods had filed against Osem in 1987. That suit went to trial in 1991 and a jury returned a $1.2 million verdict in favor of Sherwood Foods.

ance. Acting on Mr. Gibson's advice, Sherwood notified Hartford of the Osem litigation on June 18, 1991.

Hartford advised Sherwood on July 2, 1991 that the "late notice presents a possibility of prejudice of [Hartford's] rights" and that the policy might not cover the loss. Hartford stated it would research and determine coverage under a reservation of rights. Hartford disclaimed coverage on September 18, 1991, on the ground that "all of the allegations occurred prior to the inception date of the Hartford policy."

■ On November 30, 1992, Sherwood agreed to pay $100,-000 to Osem in settlement of Osem's trade dress infringement[2] and unfair and deceptive trade practice claims.

Sherwood filed this action on June 25, 1993, for indemnification for the $100,000 paid to Osem under the settlement agreement and for attorneys' fees and expenses incurred in defending against Osem's claims. On August 31, 1994, Judge Ryan held that Hartford had a duty to defend Sherwood in the Osem litigation under the terms of the insurance policy. A second hearing on partial summary judgment was held on December 15, 1994, at which time Judge Turner ruled that Hartford, having shown no prejudice by the late notice, was responsible for Sherwood's pre-notice attorneys' fees and that Hartford had a duty to indemnify Sherwood. The jury was charged with determining the amount of damages.

The jury found that the following fees and expenses were fair, reasonable and necessary to the defense of Sherwood

---

**2.** The Lanham Act creates a cause of action for trade dress infringement. 15 U.S.C. § 1125(a)(1) (Supp.1996) ("False designation of origin and false descriptions forbidden."). "The Act prohibits a manufacturer from 'passing off' his goods or services as those of another maker by virtue of substantial similarity between the products." *Blue Bell Bio–Medical v. Cin–Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir.1989). "Trade dress" is defined as "[t]he total appearance and image of a product, including features such as size, texture, shape, color or color combinations, graphics, and even particular advertising and marketing techniques used to promote its sale." BLACK'S LAW DICTIONARY 1493 (6th ed.1990).

against Osem: $64,960.00 charged by Mr. Hefter;[3] $102,-688.98 charged by Mr. Gibson; $61,074.00 charged by Mr. Spry for defense of the trademark claim; and $56,069.26 charged by Mr. Spry for defense of the defamation claim. The jury also found that the $100,000 settlement between Sherwood and Osem had been paid and that the settlement was fair and reasonable. The jury further determined that Sherwood was not entitled to pre-judgment interest. Final judgment was entered on August 3, 1995, and included awards of $23,336.78 in litigation expenses in connection with the Osem litigation and $89,237.20 in attorneys' fees, costs, and expenses in connection with the prosecution of the Montgomery County declaratory judgment action. The judgment totalled $497,366.22, plus post-judgment interest and costs. Additional facts will be added as necessary.

## STANDARD OF REVIEW

We recently summarized the standard of review applicable to the resolution of issues I through V in *General Accident Ins. Co. v. Scott,* 107 Md.App. 603, 611–12, 669 A.2d 773, *cert. denied,* 342 Md. 115, 673 A.2d 707 (1996):

> Maryland Rule 2–501 provides that a court shall enter summary judgment on the motion of a party where "there is no genuine dispute as to any material fact and . . . the party is entitled to judgment as a matter of law." . . . [T]he court's task is not to decide disputed facts. *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564 (1981). Rather, it is to determine whether there are disputes as to material facts, *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 326, 389 A.2d 887 (1978), whose resolution would somehow affect the outcome of the case. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). In reviewing a trial court's grant of summary judgment, an appellate court must also determine whether the trial court's ruling

---

3. Mr. Hefter had originally billed Sherwood $216,253.01. Sherwood paid only $64,960.00, because it contended that Hefter overbilled it and that his services had been negligently performed.

was legally correct. *Baltimore Gas and Electric Co. v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995); *Nationwide Mutual Insurance Co. v. Scherr,* 101 Md.App. 690, 694, 647 A.2d 1297 (1994).

In order to defeat a motion for summary judgment, the opposing party must show with some particularity that there is a genuine dispute as to a material fact. *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993). In determining whether there are any material facts in dispute, the trial court must give the non-moving party the benefit of all reasonable inferences and must resolve all inferences in the light most favorable to the non-moving party. *Id.* at 739, 625 A.2d 1005; *Clea v. Mayor and City Council of Baltimore,* 312 Md. 662, 678, 541 A.2d 1303 (1988). But "general allegations which do not show facts in detail and with precision are insufficient to prevent summary judgment." *Beatty, supra,* 330 Md. at 738, 625 A.2d 1005. Nor are mere conclusory denials or allegations sufficient to overcome a motion for summary judgment. *See Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 243, 603 A.2d 1357 (1992). As the Court said in *Beatty,* "the mere existence of a scintilla of evidence in support of the plaintiff's claim is insufficient to preclude the grant of summary judgment." *Beatty, supra,* 330 Md. at 738, 625 A.2d 1005.

## *DISCUSSION*

### I.

Appellants contend that all of the allegations of wrongful conduct on Sherwood's part contained in the Osem complaint and its amendments occurred prior to February 23, 1989, the inception date of the CGL policy and, therefore, the trial court erred when it granted summary judgment and ruled that Hartford had a duty to defend Sherwood under the policy. Hartford points out that the original complaint was filed on January 6, 1989, before the Hartford policy was issued to Sherwood. The complaint alleged that packaging developed prior to January 6 was a trade dress infringement and consti-

tuted unfair trade practices. The complaint was supplemented on February 27, 1989 to allege that Sherwood's "new" soup package, which appellants had become aware of "within the past several weeks," was substantially identical to its "old" package. The August 14, 1989 amendment alleged false and misleading statements made in a letter dated November 28, 1988. Hartford notes that the policy specifically excludes coverage for injury arising "out of oral or written publication of material whose *first publication* took place before the beginning of the policy period." (Emphasis added.)[4] Hart-

---

4. The pertinent portions of the policy provide as follows:

**COVERAGE B: PERSONAL AND ADVERTISING LIABILITY**
**1. Insuring Agreement.**
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B. We will have the right and duty to defend any "suit" seeking those damages. . . .
 . . . .
 b. This insurance applies to "personal injury" only if caused by an offense:
 (1) Committed in the "coverage territory" during the policy period; and
 (2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.
 c. This insurance applies to "advertising injury" only if caused by an offense committed:
 (1) In the "coverage territory" *during the policy period; and*
 (2) In the course of advertising your goods, products or services.
**2. Exclusions**
 This insurance does not apply to:
 a. "Personal injury" or "advertising injury:"
 . . .
 (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. . . .
 The policy defines "personal injury" as
 injury, other than "bodily injury," arising out of one or more of the following offenses:
 . . .
 d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

ford argues it had no duty to defend Sherwood because Osem's claims were not covered under the policy.

The duty to defend is broader than the duty to indemnify. 7C JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4684, at 83–85 (Walter F. Berdel rev., 1979). Liability insurance may also be called "litigation insurance." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 410, 347 A.2d 842 (1975). The obligation of an insurer to defend under a CGL policy is determined by the allegations in the complaint. If the plaintiff alleges a claim covered by the policy, the insurer has a duty to defend the insured in that action. *Id.* at 407, 347 A.2d 842. "Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." *Id.* at 408, 347 A.2d 842; *see also Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021 (1993) (insurer must defend insured if it appears from complaint that there is potential for liability under the policy). Further, "any doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured." *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 145, 656 A.2d 779 (1995). Once Osem alleged a claim potentially covered by the policy, Hartford was obligated to defend the entire suit "until such time, if ever, that the claims have been limited to ones outside the policy coverage." *Steyer v. Westvaco Corp.*, 450 F.Supp. 384, 398 (D.Md.1978) (citing *Brohawn, supra* ). *See also*

---

**e.** Oral or written publication of material that violates a person's right of privacy.
"Advertising injury" is defined as:
 injury arising out of one or more of the following offenses:
 **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
 **b.** Oral or written publication of material that violates a person's right of privacy;
 **c.** Misappropriation of advertising ideas or style of doing business; or
 **d.** Infringement of copyright, title or slogan.

*Titan Holdings Syndicate v. Keene,* 898 F.2d 265, 269 (1st Cir.1990) ("If some of the claims against the insured fall within the terms of coverage, and some without, the insurer must still defend the entire claim. . . ."); *Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.,* 832 F.2d 1037, 1042 (7th Cir.1987) ("As long as only one of the many grounds for recovery is potentially covered by the policy, the insurer must provide a defense against the entire complaint, even if one or more theories of recovery are specifically excluded under the policy.").

▮ As previously noted, the CGL policy issued by Hartford to Sherwood went into effect on February 23, 1989. Appellant contends:

> Under the insuring agreement, . . . the policy specifically states that the insurance for personal injury or advertising injury applies, but only if the offense was committed in the "coverage territory" *during the policy period.* The exclusions contained . . . apply both to "personal injury" and to "advertising injury" and the exclusions·state that the insurance does not apply to oral or written publication of materials whose first publication took place before the beginning of the policy period.

(Emphasis in original.) The supplemental complaint was filed on February 27, 1989, four days after the policy went into effect. It was based on the distribution of a "new" soup package. Appellee refers to the "old" packaging as the "green soup package" and to the "new" packaging as the "red soup package." Appellants conceded at oral argument that the "old" and "new" packages were different colors.

The red package could not have been "published" until it was distributed to the public. One cannot tell by reading the supplemental complaint when the red soup package was first distributed, thereby infringing on Osem's business. While Osem ambiguously claimed that the new packaging had come to its attention "within the past several weeks," the complaint does not say when Sherwood first distributed it or how it learned of the red package. Sherwood could have begun

distributing the new soup package two weeks prior to February 27, or it could have begun doing so two days prior to February 27. Under these circumstances, the supplemented complaint on its face alleges an injury that was potentially covered by the Hartford policy. The trial judge was legally correct in granting summary judgment in favor of Sherwood on the issue of Hartford's duty to defend.

## II.

Appellants contend that whether appellee made a material misrepresentation of fact at the time the policy was issued was a question of fact for the jury and, therefore, should not have been disposed of at summary judgment.

Hartford alleges that Sherwood's chief financial officer, Anat Schwartz, first applied for coverage on January 12, 1989, six days after the Osem complaint was filed in North Carolina. A person filling out Hartford's insurance application form is instructed to "enter all claims or occurrences that may give rise to claims for the prior 5 years" in a section entitled "Loss History." No claims were listed under this section, but the section includes a box, beside which is a notation, "Check here if none." The box was not checked. William C. Hall, the selling agent, testified at his deposition that he "would have asked" anyone who applied for insurance coverage about loss history but could not recall what Ms. Schwartz said on that point. The loss history section of Sherwood's application was left blank. Appellants argue that this would lead "any reasonable underwriter to conclude that there have been no losses, no claims, no suits filed against Sherwood for the past five years."

Appellee contends that no material misrepresentation was made. Mr. Hall's handwritten notes of his initial conversation with Ms. Schwartz, which contain the notation "No Losses," indicate that the two spoke on January 4, 1989.[5] This was two

---

5. The notes are actually dated "1-4-88." Neither party, however, alleges that the conversation took place in 1988.

days before the Osem complaint was filed. Mr. Hall could not specifically recall whether he spoke with Ms. Schwartz on January 12, 1989, the date he filled out the application, or whether he had spoken with her earlier. He produced no handwritten notes dated January 12, 1989. There was no evidence that Ms. Schwartz saw the application either before or after it was filled out by Mr. Hall. Ms. Schwartz did not sign the application; nor did Mr. Hall. Finally, Hartford did not receive the application until March 3, 1989, over a week after it had issued the CGL policy to Sherwood. There is no evidence that Hartford received, reviewed, or considered the application before issuing the policy.

▇ Generally, an insurance policy is void *ab initio* if the insured makes a material misrepresentation of fact in the application. Whether the misrepresentation is material "depends upon whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk." *Nationwide Mut. Ins. Co. v. McBriety*, 246 Md. 738, 744, 230 A.2d 81 (1967). Unless the parties contract otherwise, no misrepresentation by an insured will affect the validity of a policy unless the insurer relies on the misrepresentation in deciding whether to accept the risk. *Erie Ins. Exch. v. Lane*, 246 Md. 55, 59, 227 A.2d 231 (1967), *overruled in part on different grounds by Cohen v. American Home Assurance Co.*, 255 Md. 334, 258 A.2d 225 (1969).

▇▇ The insurer's burden to establish the insured's misrepresentation was not met by Hartford. Mr. Hall could not remember whether he had asked Ms. Schwartz about Sherwood's loss history. The notation "no losses" in Mr. Hall's notes from January 4, 1989 was not a misrepresentation when made because the Osem complaint was not filed until two days later. Finally, Sherwood produced unrebutted evidence proving Hartford did not rely on the application when it wrote the policy. As we stated in *General Accident Ins., supra*, 107 Md.App. at 612, 669 A.2d 773, mere conclusory allegations are insufficient to prevent summary judgment. Hartford could produce no evidence that a misrepresentation was made.

Sherwood, on the other hand, produced evidence that none was made. The motions judge was therefore legally correct in granting summary judgment on the ground that there was no genuine dispute of material fact as to whether Sherwood had made a material misrepresentation.

Further, even if we assumed, *arguendo*, that Sherwood did make a misrepresentation, Hartford clearly waived its right to object. If Hartford was truly concerned about the change in risk due to the alleged misrepresentation, it should have rescinded the policy and promptly returned all premiums and benefits to Sherwood once it had discovered the misrepresentation. *See Bagel Enters., Inc. v. Baskin & Sears,* 56 Md.App. 184, 200–01, 467 A.2d 533 (1983), *cert. denied,* 299 Md. 136, 472 A.2d 999 (1984). An insurer that does any act recognizing the continued validity of the policy after it discovers a material misrepresentation waives its right to rescind the policy. *See Finch v. Hughes Aircraft Co.,* 57 Md.App. 190, 244, 469 A.2d 867, *cert. denied,* 298 Md. 310, 469 A.2d 864 (1984), *and cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985). Not only did Hartford fail promptly to take steps showing it wished to rescind the policy, it continued to issue new policies to Sherwood for two years after learning of the Osem complaint.

## III.

Hartford argues that the trial judge erred by finding as a matter of law that Sherwood's two-and-one-half year delay in notifying it of the Osem litigation did not prejudice it, thereby relieving it of its duty to defend.

In order for an insurer to disclaim coverage based on late notice, the insurer must establish by a preponderance of the evidence that the late notice resulted in actual prejudice to it. Md.Code (1957, 1994 Repl.Vol.), Art. 48A, § 482.[6] *See*

---

6. Section 482 reads, in whole:

§ 482. **Disclaimer of coverage because of lack of notice or cooperation from insured.**

*St. Paul Fire & Marine Ins. v. House*, 315 Md. 328, 332, 554 A.2d 404 (1989). The insurer will survive summary judgment only if it raises a genuine dispute as to whether it was prejudiced by the delay in notice. *General Accident Ins., supra*, 107 Md.App. at 613, 669 A.2d 773. Alleging only "possible, theoretical, conjectural, or hypothetical prejudice" is not enough. *Id.* at 615, 669 A.2d 773. The prejudice cannot be surmised or presumed from the mere fact of delay. *Id.*

Sherwood did not notify Hartford of the Osem litigation until June 18, 1991, two-and-one-half years after the original complaint was filed. Hartford produced an affidavit from Joan Warren, a property underwriting supervisor, which stated that, had Hartford been aware of the pendency of the litigation, it would not have accepted Sherwood as a risk in 1989 and would not have rewritten the policy in 1990.

Joseph Jenkins, who works in the claims department at Hartford, was questioned at his deposition about the prejudicial effect of the delayed notice:

Q. ... [A]re you aware of any facts that would support a contention that Hartford Insurance Company suffered any actual prejudice [by reason of the late notification]?

A. Sure.

Q. What?

A. Well, there had been, you know, we weren't in the loop.

Q. What does that mean?

A. We didn't know what was going on, you know, for a period of years afterwards.... From the date the original suit was filed to the date that we became aware of the situation—

---

Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer established, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.

Q. All right.

A. ——expenses had been incurred.

Q. ... [W]hat prejudice did—actual prejudice did Hartford suffer by reason of the fact that it wasn't, as you put it, in the loop from the date that the original complaint was filed up until June 18, 1991? Specifically?

A. Late reports, of course, interfere with the ability to investigate to some extent.

Q. How did this——specifically this reporting of this loss interfere with Hartford's ability to investigate to any extent?

A. It is always easier to investigate a fresh matter.

Appellants also point to the deposition testimony of its expert witness, Francis Ford, a well-respected Maryland attorney. Mr. Ford testified in deposition that, in his opinion, the delay in reporting was prejudicial.

Q. What is the basis for [your opinion]?

A. Well, the suit and because there was a counter-claim and also a separate action, they were all filed in the early part of '89, as I recall. At that point, Mr. Hefter's firm, I think, became involved, as well as Mr. Spry's firm. They ran up, I don't know how much money ... before notice was given to the insurance company or a demand for coverage which was, I think, early June of 1991.

So you have a period of two-and-a half years, roughly, yes, where the carrier was out of the loop, totally out of the loop, had nothing to do, no say, ... nothing with respect to that litigation. And I think this was very prejudicial, that all these expenses would have been run up, et cetera, and an effort is now being made to collect it from the carrier. I think it is absolutely prejudicial.

Appellants claim that the evidence summarized above was enough to create a jury issue as to actual prejudice.

"[C]onclusory allegations about difficulties and inconveniences that would result from *any* delay in notification are not sufficient" to survive summary judgment when the issue is whether actual prejudice has been shown under section 482. *General Accident Ins., supra*, 107 Md.App. at 616, 669 A.2d 773. Hartford "failed to identify any specific, palpable instances to show how its ability to protect its interests was frustrated." *Id.* It never stated specifically how the delay affected its investigation, other than that the matter was no longer "fresh." Significantly, appellant does not claim that important information disappeared or that material evidence was no longer available.

In regard to the affidavit by Ms. Warren, Hartford accepted Sherwood as a risk by underwriting two policies after it was notified of the Osem litigation and knew that Sherwood had delayed notification for over two years. The assertion that Hartford would not have accepted Sherwood as a risk, therefore, was contradicted by Hartford's own actions. Finally, Hartford was notified one-any-one-half years before the Osem litigation went to trial, giving it plenty of time to investigate.

We hold that the trial judge was legally correct in finding that Hartford did not show it was actually prejudiced by the late notification, resolving the issue of Hartford's responsibility to pay Sherwood's attorney's fees that were incurred after Hartford was notified of Osem's claim. We proceed, in the following section, to resolve the separate issue of whether Hartford should be required to reimburse Sherwood for costs and legal fees incurred prior to its receiving notice of the Osem suit.

## IV.

Hartford argues that the trial court erred by holding it responsible for pre-notice litigation costs and attorney's fees. It maintains that until an insurer's duty to defend arises, it cannot be held liable for any costs incurred by the insured for its defense.

■ If an insurer refuses to defend on behalf of the insured, the insurer is liable for damages incurred by the insured as a result of the insurer's breach of its obligation to defend. These damages generally include the amount of judgment or settlement, the costs of litigation, and attorney's fees. *Mount Vernon Fire Ins. Co. v. Scottsdale Ins. Co.*, 99 Md.App. 545, 564–65, 638 A.2d 1196 (1994), *aff'd in part, rev'd in part sub nom. Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779 (1995); *see also American Mut. Liab. Ins. Co. v. Michigan Mut. Liab. Co.*, 64 Mich.App. 315, 235 N.W.2d 769, 774 (1975) ("an insurer's wrongful refusal to defend an action against its insured will render the insurer liable for costs and attorneys' fees").

■ Generally, the insurer has exclusive control over litigation against the insured, who must in turn surrender all control over the conduct of the defense to the insurer. 7C APPLEMAN, *supra*, § 4681. The insurer, therefore, has a duty to defend the insured "in any action where, if liability is established, the insurer would be liable and required to pay damages on behalf of the insured." 7C APPLEMAN, *supra*, § 4682, at 19–20.

> The right to a defense by the insured depends upon conditions precedent as well as the conditions subsequent which must be met by the insured before the right to a defense by the insurer matures in favor of the insured, and the insured must request that the insurer undertake the defense in accordance with the conditions in the policy.

*Id.* at 24 (internal footnote omitted).

In the case *sub judice*, Hartford's duty to defend is found in the insuring agreement. *See supra* note 5 ("We will have the right and duty to defend any suit seeking those damages...."). This raises the question: when does the insurer's duty to defend commence? The United States District Court for the District of Maryland, applying Maryland law, held that an insurer's obligation to provide a defense and, therefore, to pay attorney's fees and litigation expenses, only arises upon notice of the suit. *Scottsdale Ins. Co. v. American Empire*

*Surplus Lines Ins. Co.,* 791 F.Supp. 1079, 1084–85 (D.Md. 1992) (citing *Oweiss v. Erie Ins. Exch.,* 67 Md.App. 712, 718–19, 509 A.2d 711 (1986)).

In *Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 297, 482 A.2d 503 (1984), we said:

> It is conceded that if timely notice had been given Kemper would have been required to defend because the suit included claims for bodily injury arising out of the insured's negligence. Kemper agrees that unless *all* the allegations of an action against an insured are excluded by a policy, there is a duty to defend. *Brohawn v. Transamerica Insurance Co.,* 276 Md. 396, 347 A.2d 842 (1975). Kemper had no duty to defend, however, until the assured *requested* a defense. *See* Couch on Insurance 2d § 51:35 page 444 (2d Ed.1959) *citing, inter alia, Detroit Automobile Inter–Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414 (1980); *American Mutual Liability Ins. Co. v. Michigan Mutual Liability,* 64 Mich.App. 315, 235 N.W.2d 769 (1975); *Manny v. Estate of Anderson,* 117 Ariz. 548, 574 P.2d 36 (1977).

(Emphasis in original.) *See also Oweiss, supra,* 67 Md.App. at 718–19, 509 A.2d 711 ("The [insurer's] duty to defend did not arise until it was notified of the negligence count [covered by the insurance policy] and asked to assume the defense") *and Luppino v. Vigilant Ins. Co.,* 110 Md.App. 372, 381, 677 A.2d 617 (1996) (the duty to defend commences upon notice of a claim and extends beyond judgment until all appeals have been resolved).

This Court held in *Mount Vernon Fire Ins.* that the insurer's duty to defend did not arise until it had received a fourth amended complaint, which alleged claims potentially covered by the CGL policy at issue in that case. *Mount Vernon Fire Ins., supra,* 99 Md.App. at 564, 638 A.2d 1196. We continued:

> To obtain reimbursement of attorneys' fees from the carrier who does have the duty to defend the insured, the party seeking reimbursement must prove that the fees at issue (1)

were incurred at a time when the carrier did have a duty to defend, and (2) were reasonable and necessary to force the carrier to do its duty.

*Id.* at 565, 638 A.2d 1196.

■ We hold that Hartford first became obligated to provide a defense to Sherwood on June 18, 1991, when it received notice of the Osem litigation.[7] Hartford does not have an obligation to pay for Sherwood's attorneys' fees incurred before that date.

■ Besides the above cited precedent, there is another reason why Hartford should not be required to pay pre-notice attorney's fees. The policy issued to Sherwood states:

 2. **Duties in The Event Of Occurrence, Claim Or Suit.**

 . . . .

 d. *No insureds will, except at their own cost, voluntarily* make a payment, assume any obligation, or *incur any expense,* other than for first aid, without our consent.

(Emphasis added.) Insurance policy provisions forbidding the voluntary incurring of costs are routinely upheld. *See, e.g., Lafarge Corp. v. Hartford Casualty Ins. Co.,* 61 F.3d 389, 400 (5th Cir.1995) ("The terms of the policy are unambiguous and therefore must be enforced as written."). Such provisions

---

7. Maryland is not alone in holding that the duty to defend does not arise until the insurer is notified of the litigation and the insured tenders the defense, *i.e.,* surrenders control. *See, e.g., Eastman v. United States,* 257 F.Supp. 315, 319 (S.D.Ind.1966); *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges, A.G.,* 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406 (1970). Several courts have stated that, because there is no duty to defend prior to notice of the suit, the insurer is not liable for pre-notice attorneys' fees. *See Aetna Casualty & Sur. Co. v. Chicago Ins. Co.,* 782 F.Supp. 71, 73 (N.D.Ill.1991) (holding that insurer is not required to pay cost of defending action it was never afforded an opportunity to defend), *aff'd,* 994 F.2d 1254 (1993); *SL Indus., Inc. v. American Motorists Ins. Co.,* 128 N.J. 188, 607 A.2d 1266 (1992) (holding that insured cannot demand reimbursement for defense insurer had no opportunity to control if insured does not promptly notify insurer of facts triggering coverage); *Heffernan & Co. v. Hartford Ins. Co. of Am.,* 418 Pa.Super. 326, 614 A.2d 295 (1992) (holding that attorneys' fees can be awarded only from time duty to defend arose).

have been construed to preclude the payment of pre-notice attorneys' fees by insurers. *See Northern Ins. Co. of New York v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1360 (9th Cir.) (holding that Allied may not be held liable for portion of attorney's fees paid pre-tender of defense due to policy provision precluding reimbursement for defense costs voluntarily incurred), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3033, 120 L.Ed.2d 903 (1992); *Gribaldo, Jacobs, Jones & Assocs., supra,* 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406 (enforcing policy provision that required plaintiffs to pay for voluntarily incurred costs without first obtaining insurers' consent).[8]

Sherwood, citing section 482 of the Insurance Code (*see supra* note 7), argues that an insured is entitled to pre-notice defense costs and expenses when the insurer has not demonstrated actual prejudice as a result of the delay in receiving notice.[9] Section 482 prevents an insurer from dis-

---

8. The insurer's unjustified refusal to defend after notice of a claim would, however, constitute a waiver of the provision insofar as post-notification attorneys' fees are concerned. *Cf. United States Fidelity & Guar. Co. v. National Paving & Contracting Co.*, 228 Md. 40, 178 A.2d 872 (1962) (stating that a denial of liability and refusal to defend releases insured from provision prohibiting settlement of claims without insurer's consent). In other words, when an insurer wrongfully refuses to defend, any attorneys' fees thereafter incurred by the insured are not incurred voluntarily.

9. Courts in other jurisdictions have used an actual prejudice analysis in holding that an insurer is liable for pre-notice defense costs. *See TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1493 (10th Cir.1995) ("in the absence of a showing of prejudice, the insurer's duty to defend includes the duty to reimburse for reasonable costs of defense incurred prior to notice, as well as for subsequent defense costs"); *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1178 (5th Cir.1992) (holding that insurer is liable for pre-notice expenses because it did not show actual prejudice by delay and relied on pre-notice investigation without conducting one of its own); *Rovira v. LaGoDa, Inc.*, 551 So.2d 790, 794–95 (La.Ct.App. 1989) (holding that delayed notice relieves insurer of obligation to pay defense costs if it was actually prejudiced by delay).

The *Peavey* and *Rovira* courts agree that the insurer's duty to defend does not arise until it is notified of the claim or suit. *Peavey, supra,* 971 F.2d at 1178; *Rovira, supra,* 551 So.2d at 794–95. The law on when the duty to defend arises in Pennsylvania (the state law at issue in *TPLC, Inc.*) is not so clear. The cases cited above are not attempting to interpret a statute such as § 482; they are based on case law. Unlike

claiming liability coverage [10] on the ground "that the insured ... has breached the policy ... by not giving requisite notice to the insurer" unless the insurer can prove that the late notice caused it actual prejudice.[11] Section 482 would have application to this case only if Hartford claimed it did not owe pre-notice attorneys' fees because Sherwood breached the insurance contract. Hartford does not claim that Sherwood breached the contract. Instead, it claims that Hartford did not breach the duty to defend portion of the CGL policy at any point before it was notified of Osem's claim and it was, therefore, not liable for attorneys' fees incurred prior to that point. Section 482 does not create coverage where none previously existed. There is an important distinction between an insurer's defense based on lack of a contractual duty and those based on the claim that the insurer is not liable because the insured has breached a condition set forth in the policy.[12]

the precedent relied on in those cases, Maryland precedent unambiguously teaches that an insured seeking reimbursement for a breach of a duty to defend must prove, *inter alia*, that the attorneys' fees "were incurred at a time when the carrier did have a duty to defend." *Mount Vernon Fire Ins., supra*, 99 Md.App. at 564, 638 A.2d 1196.

10. We conclude that the term "coverage," as used in § 482, includes the duty to defend as well as the duty to indemnify because the duty to defend is found in the insuring agreement. *See Washington v. State Farm Fire & Casualty Co.*, 629 A.2d 24, 28 (D.C.1993). The cost of defense is a risk against which the CGL policy is designed to protect.

11. Cases construing § 482 generally involve the issue of whether the insured has the *status* of being covered with indemnity protection for past wrongdoing. *Accord Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.*, 790 F.Supp. 1318, 1330 (E.D.Mich.1992) (citing to Michigan late notice cases that have established a requirement of showing actual prejudice). Thus, § 482 controls the circumstances under which an insurer may disclaim coverage it clearly has under the policy.

12. Hartford's policy, like most CGL policies, contains the following provisions:
 2. **Duties in The Event Of Occurrence, Claim Or Suit.**
 a. You must see to it that we are notified promptly of an "occurrence" which may result in a claim....
 b. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit."

We hold that section 482 applies only when it is claimed that the insured has breached a condition. Because Hartford did not disclaim liability for pre-notice attorneys' fees and costs based on Sherwood's breach of a condition, Hartford was not required to prove that it was prejudiced by Sherwood's late notice.[13]

We will remand in order for the circuit court to recalculate damages by excluding all attorneys' fees and costs incurred by Sherwood prior to June 18, 1991—the date Hartford was notified of the claim.[14]

---

13. Appellee also argues that an insured's breach of its promise to give prompt notice is an immaterial breach. Md.Code Art. 48A, § 482. *See House, supra,* 315 Md. at 332, 554 A.2d 404 (stating that statute measures by standard of actual prejudice materiality of any breach by insured to determine if breach excuses performance by insurer). The remedy for a partial breach is the damages suffered as a result of that breach. *Speed v. Bailey,* 153 Md. 655, 660, 139 A. 534 (1927). Appellee contends that Hartford has the burden of proving its damages as a result of Sherwood's late notice. *Schackow v. Medical-Legal Consulting Serv., Inc.,* 46 Md.App. 179, 191–92, 416 A.2d 1303 (1980). *See also Nortek, Inc. v. Liberty Mut. Ins. Co.,* 858 F.Supp. 1231, 1241–42 (D.R.I. 1994) (stating that party that failed to comply with notice provision is liable for any additional or excessive fees caused as a result). The proper analysis, however, of an insurer's liability for pre-notice attorneys' fees must start by examining whether the insurer is denying liability based on some breach on the part of the insured or whether the defense is based on the legal principle that an insurer owes no duty to defend until it has been notified of a breach.

14. Hartford sets out in its brief a general breakdown of what fees and expenses were incurred pre-notice. Hartford contends that all fees claimed by Mr. Hefter were incurred prior to June 18, 1991, the date that Hartford received notice of the Osem litigation. Plaintiff's Exhibit 8, which consists of the invoices from Mr. Hefter's firm, Finnegan, Henderson, Farabow, Garrett & Dunner, bears this out. The last invoice is dated May 17, 1991.

Hartford alleges that "[m]ost (99%) of the Spry bill for the trademark case" was incurred prior to June 18, 1991, while "[a]pproximately $25,000.00 of Spry's bill for services rendered in the defamation" suit was incurred after June 18, 1991. Plaintiff's Exhibits 2 and 3 consist of the invoices for work done on the trademark case and defamation case, respectively, by Mr. Spry's firm. Hartford contends that a "portion" of the fees claimed by Mr. Gibson was incurred prior to June 18, 1991. Plaintiff's Exhibit 21 consists of the invoices from Bell, Seltzer, Park & Gibson. The first three invoices are for work performed before June

## V.

Hartford contends, and Sherwood agrees, that the trial judge erred in ruling that Hartford was liable for the payment of legal fees and other costs incurred before the effective date of the CGL policy issued to Sherwood. We shall remand for a recalculation of damages in this regard.[15]

## VI.

Cross-appellant, Sherwood, contends that it was entitled to prejudgment interest as a matter of law. Sherwood asked for a ruling on this issue in its motion for judgment made at the conclusion of its case and "renewed" at the conclusion of Hartford's case.[16] The trial judge denied the motion and sent the issue to the jury. Sherwood contends this was error.

---

18, 1991. On remand, Sherwood must demonstrate what was billed for work performed by each law firm after June 18, 1991.

Finally, Hartford argues that "[a]pproximately one-half of the charges for litigation expenses" were incurred prior to June 18, 1991. Hartford cites to Plaintiff's Exhibit 16 in support of this argument. On remand, Sherwood must demonstrate what was billed for work performed after June 18, 1991.

15. Hartford does not indicate in its brief the amount of fees and expenses incurred between January 6, 1989, the date the Osem complaint was filed, and February 23, 1989, the date the Hartford policy went into effect. On remand, Sherwood may be able to demonstrate, using Plaintiff's Exhibits 2, 8, and 16, the amount of fees and expenses incurred before the date the policy was issued, and which were incurred afterward.

16. Sherwood's trial counsel made a motion for judgment at the close of plaintiff's case. As part of that motion, he stated:

I would ask that Your Honor rule as a matter of law that prejudgment interest is recoverable in this matter on the grounds that the law as set forth in the various cases that I have cited, including those in the proposed jury instruction by the plaintiff, is that if funds have actually been used, then they may be recoverable——pre-judgment interest, rather, is recoverable thereupon, Your Honor, as set forth in cases such as the Distillery case and the I.W. Furman [sic] Properties case and in the cases therein.

Counsel for Hartford correctly characterized the motion as "premature" and the motion was denied. At the close of all the evidence counsel for Sherwood asked to "renew the motions I made at the close of the evidence earlier.... I adopt them by reference specifically."

■ "The purpose of the allowance of prejudgment interest is to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds." *I.W. Berman Properties v. Porter Bros., Inc.*, 276 Md. 1, 24, 344 A.2d 65 (1975). Whether a party is entitled to pre-judgment interest is usually a jury issue. *Atlantic States Const. Co. v. Drummond & Co.*, 251 Md. 77, 85, 246 A.2d 251 (1968).

"However, this general rule is subject to certain exceptions that are as well established as the rule itself. Among the exceptions are cases [where the party seeking pre-judgment interest must] pay money on a day certain, and cases where the money has been used. If the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due."

*Id.* (quoting *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co.*, 213 Md. 509, 516, 132 A.2d 582 (1957)). *See also Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership*, 100 Md.App. 441, 460, 641 A.2d 977 (1994).

---

Merely stating that a party "renews" its motion for judgment at the close of all the evidence, after making a motion at the close of the opponent's evidence, usually is not enough to preserve the issue for appellate review. *Ford v. Tittsworth*, 77 Md.App. 770, 773–74, 551 A.2d 945 (1989). Normally, counsel is required to restate with particularity all reasons why the motion should be granted. *Id.* That general rule does not dispose of the case *sub judice*, however, because Sherwood originally made a motion for judgment at the close of its own evidence, not at the close of its opponent's evidence. The rationale for holding that merely "renewing" a motion for judgment does not preserve the issue for appeal is that the original motion for judgment is withdrawn once the party making the motion presents evidence. *Smith v. Carr*, 189 Md. 338, 56 A.2d 151 (1947); Md. Rule 2–519(c). Because Sherwood had already presented its evidence when it initially moved for judgment, and because it is evident that the reasons for the motion were clear to the trial judge, the issue is preserved. Hartford does not contend otherwise. *See Laubach v. Franklin Square Hospital*, 79 Md. App. 203, 216, 556 A.2d 682 (1989) (holding that reference to memorandum previously submitted to court laying out with particularity arguments in support of motion preserves issue) (citing *Sergeant Co. v. Pickett*, 283 Md. 284, 289–90, 388 A.2d 543 (1978)), *aff'd*, 318 Md. 615, 569 A.2d 693 (1990).

In reviewing the trial judge's ruling on a motion for judgment, we look at the evidence in the light most favorable to the non-moving party. *Cavacos v. Sarwar*, 313 Md. 248, 250, 545 A.2d 46 (1988); Md. Rule 2–519(b). Sherwood was able to outline what fees it had already paid, when it had paid those fees, what fees it had not already paid, and when it had paid the $100,000 settlement. The sums paid in this case seem to fall within the exceptions cited above. When the motion for judgment was first made, however, Hartford had not been given an opportunity to dispute the reasonableness of the attorneys' fees and whether the settlement had actually been paid. The trial judge was correct in not granting the motion for judgment at the close of plaintiff's case.

Hartford called Robert Alpert as an expert in the field of litigation management to testify as to his opinion of the reasonableness of the attorneys' fees incurred by Sherwood. Mr. Alpert did not, however, dispute the fact that Sherwood had made payments to the three law firms it hired to defend it in the Osem litigation, nor did he dispute the dates on which those payments were made. Mr. Alpert merely expressed his opinion that the fees charged were excessive.

When Hartford rested its case, the record showed the monies Sherwood had paid for post-notice attorneys' fees, litigation expenses, and settlement costs that Hartford should have paid.

Hartford, as cross-appellee, contends that disputes existed regarding the fair and reasonableness of attorney's fees being claimed and the question of whether, in fact, the appellant paid $100,000.00 in order to settle the underlying lawsuit. The amount of liquidated damages could not be determined until such time as the jury had an opportunity to review the evidence and to enter its findings.

The Maryland cases it cites in support, however, are distinguishable. *See First Virginia Bank v. Settles*, 322 Md. 555, 565, 588 A.2d 803 (1991) (payment of deficiency not due until buyer was furnished written statement that showed disposition of proceeds of resale as required by law); *Republic Ins.*

*Co. v. Prince George's County,* 92 Md.App. 528, 539, 608 A.2d 1301 (Republic's obligation under performance bond was not liquidated until judgment was entered against it because calculation of amount due before performance is complete would be mere estimate), *cert. granted,* 328 Md. 462, 615 A.2d 262 (1992), *and cert. dismissed,* 329 Md. 349, 619 A.2d 553 (1993); *Wartzman v. Hightower Prods., Ltd.,* 53 Md.App. 656, 456 A.2d 82 (damages sought were lost profits, which are, by definition, estimates), *cert. denied,* 296 Md. 112 (1983).

 We held in *Travel Comm., Inc. v. Pan Am. World Airways, Inc.,* 91 Md.App. 123, 603 A.2d 1301, *cert. denied,* 327 Md. 525, 610 A.2d 797 (1992), that a dispute over the actual amount owed between the parties "indicates that the sum owed was not certain until the jury made its determination, but we see no reason why this should interfere with an award for pre-judgment interest as to that amount actually due and owing." *Id.* at 188, 603 A.2d 1301.[17] We concluded that Pan Am was entitled as a matter of law to pre-judgment interest accrued from the dates payments were due, thereby vacating that portion of the trial court's award and remanding for a new computation of interest. *Id.* We find this case on point and hold that the trial judge erred in not ruling that Sherwood was entitled to prejudgment interest, as a matter of law. On remand the court shall compute interest based on the award due Sherwood.

**JUDGMENT IN FAVOR OF SHERWOOD BRANDS, INC. VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID 75 PERCENT BY APPELLANT/CROSS–APPELLEE AND 25 PERCENT BY APPELLEE/CROSS–APPELLANT.**

---

**17.** *See also Brethren Mut. Ins. Co. v. Filsinger,* 54 Md.App. 357, 365, 458 A.2d 880 (holding that, regardless of insurer's good faith denial of coverage, plaintiff is entitled to recover interest to put it in position it would have been in if coverage had not been denied), *cert. denied,* 296 Md. 223 (1983).